Justice Ginsburg
delivered the opinion of the Court.
This case concerns the time within which health care providers may file an administrative appeal from the initial determination of the reimbursement due them for inpatient services rendered to Medicare beneficiaries. Government contractors, called fiscal intermediaries, receive cost reports annually from care providers and notify them of the reimbursement amount for which they qualify. A provider dissatisfied with the fiscal intermediary’s determination may appeal to an administrative body named the Provider Reimbursement Review Board (PRRB or Board). The governing statute, § 602(h)(1)(D), 97 Stat. 165, 42 U. S. C. § 1395oo(a)(3), sets a 180-day limit for filing appeals from the fiscal intermediary to the PRRB. By a regulation promulgated in 1974, the Secretary of the Department of Health and Human *149 Services (HHS) authorized the Board to extend the 180-day limitation, for good cause, up to three years.[1]
The providers in this case are hospitals who appealed to the PRRB more than ten years after expiration of the 180-day statutory deadline. They assert that the Secretary’s failure to disclose information that made the fiscal intermediary’s reimbursement calculation incorrect prevented them from earlier appealing to the Board. Three positions have been briefed and argued regarding the time for providers’ appeals to the PRRB. First, a Court-appointed amicus curiae has urged that the 180-day limitation is “jurisdictional,” and therefore cannot be enlarged at all by agency or court. Second, the Government maintains that the Secretary has the prerogative to set an outer limit of three years for appeals to the Board. And third, the hospitals argue that the doctrine of equitable tolling applies, stopping the 180-day clock during the time the Secretary concealed the information that made the fiscal intermediary’s reimbursement determinations incorrect.
We hold that the statutory 180-day limitation is not “jurisdictional,” and that the Secretary reasonably construed the statute to permit a regulation extending the time for a provider’s appeal to the PRRB to three years. We further hold that the presumption in favor of equitable tolling does not apply to administrative appeals of the kind here at issue.
HH
The Medicare program covers certain inpatient services that hospitals provide to Medicare beneficiaries. Providers are reimbursed at a fixed amount per patient, regardless of the actual operating costs they incur in rendering these services. But the total reimbursement amount is adjusted up *150 ward for hospitals that serve a disproportionate share of low-income patients. This adjustment is made because hospitals with an unusually high percentage of low-income patients generally have higher per-patient costs; such hospitals, Congress therefore found, should receive higher reimbursement rates. See H. R. Rep. No. 99-241, pt. 1, p. 16 (1985). The amount of the disproportionate share adjustment is determined in part by the percentage of the patients served by the hospital who are eligible for Supplemental Security Income (SSI) payments, a percentage commonly called the SSI fraction. 42 U. S. C. § 1395ww(d) (2006 ed. and Supp. V).
At the end of each year, providers participating in Medicare submit cost reports to contractors acting on behalf of HHS known as fiscal intermediaries. Also at year end, the Centers for Medicare & Medicaid Services (CMS) calculates the SSI fraction for each eligible hospital and submits that number to the intermediary for that hospital. Using these numbers to determine the total payment due, the intermediary issues a Notice of Program Reimbursement (NPR) informing the provider how much it will be paid for the year.
If a provider is dissatisfied with the intermediary’s reimbursement determination, the statute gives it the right to file a request for a hearing before the PRRB within 180 days of receiving the NPR. § 1395oo(a)(3) (2006 ed.) In 1974, the Secretary promulgated a regulation, after notice and comment rulemaking, permitting the Board to extend the 180-day time limit upon a showing of good cause; the regulation further provides that “no such extension shall be granted by the Board if such request is filed more than 3 years after the date the notice of the intermediary’s determination is mailed to the provider.” 39 Fed. Reg. 34517 (1974) (codified in 42 CFR § 405.1841(b) (2007)).[2]
*151 For many years, CMS released only the results of its SSI fraction calculations and not the underlying data.[3] The Baystate Medical Center—a hospital not party to this case— timely appealed the calculation of its SSI fraction for each year from 1993 through 1996. Eventually, the PRRB determined that CMS had omitted several categories of SSI data from its calculations and was using a flawed process to determine the number of low-income beneficiaries treated by hospitals. These errors caused a systematic undercalculation of the disproportionate share adjustment, resulting in underpayments to the providers. Baystate Medical Center v. Leavitt, 545 F. Supp. 2d 20, 26-30 (DC 2008); see id., at 57-58 (concluding that CMS failed to use the “best available data”).
The methodological errors revealed by the Board’s Bay-state decision would have yielded similarly reduced payments to all providers for which CMS had calculated an SSI fraction. In March 2006, the Board’s decision in the Bay-state case was made public. Within 180 days, the hospitals in this case filed a complaint with the Board seeking to challenge their disproportionate share adjustments for the years 1987 through 1994. The hospitals acknowledged that their challenges, unlike Baystate’s timely contest, were more than a decade out of time. But equitable tolling of the limitations period was in order, they urged, due to CMS’s failure to inform the hospitals that their SSI fractions had been based on faulty data.
The PRRB held that it lacked jurisdiction over the hospitals’ complaint, reasoning that it had no equitable powers save those legislation or regulation might confer, and that *152 the Secretary’s regulation permitted it to excuse late appeals only for good cause, with three years as the outer limit. On judicial review, the District Court dismissed the hospitals’ claims for relief, holding that nothing in the statute suggests that “Congress intended to authorize equitable tolling.” 686 F. Supp. 2d 56, 70 (DC 2010).
The Court of Appeals reversed. 642 F. 3d 1145 (CADC 2011). It relied on the presumption that statutory limitations periods are generally subject to equitable tolling and reasoned that “ ‘the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.’ ” Id., at 1148 (quoting Irwin v. Department of Veterans Affairs, 498 U. S. 89, 95-96 (1990)). The presumption applies to the 180-day time limit for provider appeals from reimbursement determinations, the Court of Appeals held, finding nothing in the statutory provision for PRRB review indicating that Congress intended to disallow equitable tolling. 642 F. 3d, at 1149-1151.
We granted the Secretary’s petition for certiorari, 567 U. S. 933 (2012), to resolve a conflict among the Courts of Appeals over whether the 180-day time limit in 42 U. S. C. § 1395oo(a)(3) constricts the Board’s jurisdiction. Compare 642 F. 3d 1145 (case below); Western Medical Enterprises, Inc. v. Heckler, 783 F. 2d 1376, 1379-1380 (CA9 1986) (180-day limit is not jurisdictional and the Secretary may extend it for good cause), with Alacare Home Health Servs., Inc. v. Sullivan, 891 F. 2d 850, 855-856 (CA11 1990) (statute of limitations is jurisdictional and the Secretary lacked authority to promulgate good-cause exception); St. Joseph’s Hospital of Kansas City v. Heckler, 786 F. 2d 848, 852-853 (CA8 1986) (same). Beyond the jurisdictional inquiry,[4] the Secre *153 tary asked us to determine whether the Court of Appeals erred in concluding that equitable tolling applies to providers’ Medicare reimbursement appeals to the PRRB, notwithstanding the Secretary’s regulation barring such appeals after three years.
II
A
Characterizing a rule as jurisdictional renders it unique in our adversarial system. Objections to a tribunal’s jurisdiction can be raised at any time, even by a party that once conceded the tribunal’s subject-matter jurisdiction over the controversy. Tardy jurisdictional objections can therefore result in a waste of adjudicatory resources and can disturbingly disarm litigants. See Henderson v. Shinseki, 562 U. S. 428, 434 (2011); Arbaugh v. Y & H Corp., 546 U. S. 500, 514 (2006). With these untoward consequences in mind, “we have tried in recent cases to bring some discipline to the use” of the term “jurisdiction.” Henderson, 562 U. S., at 435; see also Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 90 (1998) (jurisdiction has been a “word of many, too many, meanings” (internal quotation marks omitted)).
To ward off profligate use of the term “jurisdiction,” we have adopted a “readily administrable bright line” for determining whether to classify a statutory limitation as jurisdictional. Arbaugh, 546 U. S., at 516. We inquire whether Congress has “clearly state[d]” that the rule is jurisdictional; absent such a clear statement, we have cautioned, “courts should treat the restriction as nonjurisdictional in character.” Id., at 515-516; see also Gonzalez v. Thaler, 565 U. S. 134, 137 (2012); Henderson, 562 U. S., at 435-436. This is not to say that Congress must incant magic words in order to speak clearly. We consider “context, including this Court’s *154 interpretations of similar provisions in many years past,” as probative of whether Congress intended a particular provision to rank as jurisdictional. Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 168 (2010); see also John R. Sand & Gravel Co. v. United States, 552 U. S. 130, 133-134 (2008).
We reiterate what it would mean were we to type the governing statute, 42 U. S. C. § 1395oo(a)(3), “jurisdictional.” Under no circumstance could providers engage PRRB review more than 180 days after notice of the fiscal intermediary’s final determination. Not only could there be no equitable tolling. The Secretary’s regulation providing for a good-cause extension, see swpra, at 150, would fall as well.
The language Congress used hardly reveals a design to preclude any regulatory extension. Section 1395oo(a)(3) instructs that a provider of services “may obtain a hearing” by the Board regarding its reimbursement amount if “such provider files a request for a hearing within 180 days after notice of the intermediary’s final determination.” This provision “does not speak in jurisdictional terms.” Zipes v. Trans World Airlines, Inc., 455 U. S. 385, 394 (1982). Indeed, it is less “jurisdictional” in tone than the provision we held to be nonjurisdictional in Henderson. There, the statute provided that a veteran seeking Veterans Court review of the Department of Veterans Affairs’ determination of disability benefits “shall file a notice of appeal . . . within 120 days.” 562 U. S., at 438 (quoting 38 U. S. C. § 7266(a); emphasis added). Section 1395oo(a)(3), by contrast, contains neither the mandatory word “shall” nor the appellation “notice of appeal,” words with jurisdictional import in the context of 28 U. S. C. § 2107’s limitations on the time for appeal from a district court to a court of appeals. See Bowles v. Russell, 551 U. S. 205, 214 (2007).
Key to our decision, we have repeatedly held that filing deadlines ordinarily are not jurisdictional; indeed, we have described them as “quintessential claim-processing rules.” Henderson, 562 U. S., at 435; see also Scarborough v. Princ *155 ipi, 541 U. S. 401, 414 (2004) (filing deadline for fee applications under Equal Access to Justice Act); Kontrick v. Ryan, 540 U. S. 443, 454 (2004) (filing deadlines for objecting to debtor’s discharge in bankruptcy); Honda v. Clark, 386 U. S. 484, 498 (1967) (filing deadline for claims under the Trading with the Enemy Act). This case is scarcely the exceptional one in which a “century’s worth of precedent and practice in American courts” rank a time limit as jurisdictional. Bowles, 551 U. S., at 209, n. 2; cf. Kontrick, 540 U. S., at 454 (a time limitation may be emphatic, yet not jurisdictional).
B
Amicus urges that the three requirements in § 1395oo(a) are specifications that together define the limits of the PRRB’s jurisdiction. Subsection (a)(1) specifies the claims providers may bring to the Board, and subsection (a)(2) sets forth an amount-in-controversy requirement. These are jurisdictional requirements, amicus asserts, so we should read the third specification, subsection (a)(3)’s 180-day limitation, as also setting a jurisdictional requirement.
Last Term, we rejected a similar proximity-based argument. A requirement we would otherwise classify as non-jurisdictional, we held, does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions. Gonzalez, 565 U. S., at 146-147; see Weinberger v. Salfi, 422 U. S. 749, 763-764 (1975) (statutory provision at issue contained three requirements for judicial review, only one of which was jurisdictional).
Amicus also argues that the 180-day time limit for provider appeals to the PRRB should be viewed as jurisdictional because Congress could have expressly made the provision nonjurisdictional, and indeed did so for other time limits in the Medicare Act. Amicus notes particularly that when Medicare beneficiaries request the Secretary to reconsider a benefits determination, the statute gives them a time limit of 180 days or “such additional time as the Secretary may allow.” 42 U. S. C. § 1395ff(b)(1)(D)(i); see also *156 § 1395ff(b)(1)(D)(ii) (permitting Medicare beneficiary to request a hearing by the Secretary within “time limits” the Secretary “shall establish in regulations”). We have recognized, as a general rule, that Congress’ use of “certain language in one part of the statute and different language in another” can indicate that “different meanings were intended.” Sosa v. Alvarez-Machain, 542 U. S. 692, 711, n. 9 (2004) (internal quotation marks omitted). Amicus notes this general rule in urging that an express grant of authority for the Secretary to extend the time for beneficiary appeals implies the absence of such leeway for provider appeals.
But the interpretive guide just identified, like other canons of construction, is “no more than [a] rul[e] of thumb” that can tip the scales when a statute could be read in multiple ways. Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253 (1992). For the reasons earlier stated, see supra, at 153-155, we are persuaded that the time limitation in § 1395oo(a) is most sensibly characterized as a nonjurisdictional prescription. The limitation therefore does not bar the modest extension contained in the Secretary’s regulation.
Ill
We turn now to the question whether § 1395oo(a)(3)’s 180-day time limit for a provider to appeal to the PRRB is subject to equitable tolling.
A
Congress vested in the Secretary large rulemaking authority to administer the Medicare program. The PRRB may adopt rules and procedures only if “not inconsistent” with the Medicare Act or “regulations of the Secretary.” 42 U. S. C. § 1395oo(e). Concerning the 18Q-day period for an appeal to the Board from an intermediary’s reimbursement determination, the Secretary’s regulation implementing § 1395oo, adopted after notice and comment, speaks in no uncertain terms:
*157 “A request for a Board hearing filed after [the 180-day time limit] shall be dismissed by the Board, except that for good cause shown, the time limit may be extended. However, no such extension shall be granted by the Board if such request is filed more than 3 years after the date the notice of the intermediary’s determination is mailed to the provider.” 42 CFR § 405.1841(b) (2007).
The Secretary allowed only a distinctly limited extension of time to appeal to the PRRB, cognizant that “the Board is burdened by an immense caseload,” and that “procedural rules requiring timely filings are indispensable devices for keeping the machinery of the reimbursement appeals process running smoothly.” High Country Home Health, Inc. v. Thompson, 359 F. 3d 1307, 1310 (CA10 2004). Imposing equitable tolling to permit appeals barred by the Secretary’s regulation would essentially gut the Secretary’s requirement that an appeal to the Board “shall be dismissed” if filed more than 180 days after the NPR, unless the provider shows “good cause” and requests an extension no later than three years after the NPR. A court lacks authority to undermine the regime established by the Secretary unless her regulation is “arbitrary, capricious, or manifestly contrary to the statute.” Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 844 (1984).
The Secretary’s regulation, we are satisfied, survives inspection under that deferential standard. As HHS has explained, “[i]t is in the interest of providers and the program that, at some point, intermediary determinations and the resulting amount of program payment due the provider or the program become no longer open to correction.” CMS, Medicare: Provider Reimbursement Manual, pt. 1, ch. 29, §2930, p. 29-73 (rev. no. 372, 2011); cf. Taylor v. Freeland & Kronz, 503 U. S. 638, 644 (1992) (“Deadlines may lead to unwelcome results, but they prompt parties to act and produce finality.”). The Secretary brought to bear practical experience in superintending the huge program generally, and the *158 PRRB in particular, in maintaining three years as the outer limit. A court must uphold the Secretary’s judgment as long as it is a permissible construction of the statute, even if it differs from how the court would have interpreted the statute in the absence of an agency regulation. National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 980 (2005); see also Chevron, 467 U. S., at 843, n. 11.
B
Rejecting the Secretary’s position, the Court of Appeals relied principally on this Court’s decision in Irwin, 498 U. S., at 95-96. Irwin concerned the then 30-day time period for filing suit against a federal agency under Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e-16(c) (1988 ed.). We held in Irwin that “the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.” 498 U. S., at 95-96. Irwin itself, and equitable-tolling cases we have considered both pre- and post-Irwin, have generally involved time limits for filing suit in federal court. See, e. g., Holland v. Florida, 560 U. S. 631 (2010) (one-year limitation for filing application for writ of habeas corpus); Rotella v. Wood, 528 U. S. 549 (2000) (four-year period for filing civil Racketeer Influenced and Corrupt Organizations Act suit); United States v. Beggerly, 524 U. S. 38 (1998) (12-year period to bring suit under Quiet Title Act); Lampf Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U. S. 350 (1991) (one- and three-year periods for commencing civil action under § 10(b) of the Securities Exchange Act of 1934); Honda v. Clark, 386 U. S. 484 (1967) (60-day period for filing suit under Trading with the Enemy Act); Kendall v. United States, 107 U. S. 123 (1883) (six-year period for filing suit in Court of Claims). Courts in those cases rendered in the first instance the decision whether equity required tolling.
This case is of a different order. We have never applied the Irwin presumption to an agency’s internal appeal dead *159 line, here the time a provider has to appeal an intermediary’s reimbursement determination to the PRRB. Cf. United States v. Brockamp, 519 U. S. 347, 350 (1997) (assuming, ar-guendo, that Irwin presumption applied to time limit for filing an administrative claim for a tax refund, but concluding based on statutory text, structure, and purpose that there was “good reason to believe that Congress did not want the equitable tolling doctrine to apply”).
The presumption of equitable tolling was adopted in part on the premise that “[s]uch a principle is likely to be a realistic assessment of legislative intent.” Irwin, 498 U. S., at 95. But that premise is inapt in the context of providers’ administrative appeals under the Medicare Act. The Act, until 1972, provided no avenue for providers to obtain administrative or judicial review. When Congress first directed the Secretary to establish the PRRB, Congress simultaneously imposed the 180-day deadline, with no statutory exceptions. For nearly 40 years the Secretary has prohibited the Board from extending that deadline, except as provided by regulation. And until the D. C. Circuit’s decision in this case, no court had ever read equitable tolling into § 1395oo(a)(3) or the Secretary’s implementation of that provision. Congress amended § 1395oo six times since 1974, each time leaving untouched the 180-day administrative appeal provision and the Secretary’s rulemaking authority. At no time did Congress express disapproval of the three-year outer time limit set by the Secretary for an extension upon a showing of good cause. See Commodity Futures Trading Comm’n v. Schor, 478 U. S. 833, 846 (1986) (“[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency’s interpretation is persuasive evidence that the interpretation is the one intended by Congress.” (internal quotation marks omitted)).
We note, furthermore, that unlike the remedial statutes at issue in many of this Court’s equitable-tolling decisions, see *160 Irwin, 498 U. S., at 91; Bowen v. City of New York, 476 U. S. 467, 480 (1986); Zipes, 455 U. S., at 398, the statutory scheme before us is not designed to be “‘unusually protective’ of claimants,” Bowen, 476 U. S., at 480. Nor is it one “in which laymen, unassisted by trained lawyers, initiate the process.” Zipes, 455 U. S., at 397 (internal quotation marks omitted); The Medicare payment system in question applies to “sophisticated” institutional providers assisted by legal counsel, and “generally capable of identifying an underpayment in [their] own NPR within the 180-day time period specified in 42 U. S. C. § 1395oo(a)(3).” Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U. S. 449, 456 (1999). As repeat players who elect to participate in the Medicare system, providers can hardly claim lack of notice of the Secretary’s regulations.
The hospitals ultimately argue that the Secretary’s regulations fail to adhere to the “fundamentals of fair play.” FCC v. Pottsville Broadcasting Co., 309 U. S. 134, 143 (1940). They point, particularly, to 42 CFR § 405.1885(b)(3) (2012), which permits reopening of an intermediary’s reimbursement determination “at any time if it is established that such determination . . . was procured by fraud or similar fault of any party to the determination.”[5]
We considered a similar alleged inequity in Your Home and explained that it was justified by the “administrative realities” of the provider reimbursement appeal system. 525 U. S., at 455. There are only a few dozen fiscal intermediaries and they are charged with issuing tens of thousands of NPRs, while each provider can concentrate on a single NPR, its own. Id., at 456. The Secretary, Your Home concluded, could reasonably believe that this asymmetry justifies giving the intermediaries more time to discover overpayments than the providers have to discover underpay- *161 merits. Moreover, the fraud exception allowing indefinite reopening does apply to an intermediary if it “procured” a Board decision by “fraud or similar fault.” Although an intermediary is not a party to its own determination, it does rank as a party in proceedings before the Board. 42 CFR § 405.1843(a).[6]
* * *
We hold, in sum, that the 180-day statutory deadline for administrative appeals to the PRRB, contained in 42 U. S. C. § 1395oo(a)(3), is not “jurisdictional.” Therefore the Secretary lawfully exercised her rulemaking authority in providing for a three-year “good cause” extension. We further hold that the equitable-tolling presumption our Irwin decision approved for suits brought in court does not similarly apply to administrative appeals of the kind here considered, and that the Secretary’s regulation, 42 CFR § 405.1841(b), is a permissible interpretation of the statute.
The judgment of the United States Court of Appeals for the District of Columbia Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 The agency was called the Department of Health, Education, and Welfare until 1979, but for simplicity’s sake we refer to it as HHS throughout this opinion.

 In 2008, after this case commenced, the Secretary replaced the 1974 regulation with a new prescription limiting “good cause” to “extraordinary circumstances beyond [the provider’s] control (such as a natural or other catastrophe, fire, or strike).” 73 Fed. Reg. 30250 (2008) (codified in 42 CFR § 405.1836(b) (2012)). The new regulation retains the strict three- *151 year cutoff for all claims. § 405.1836(c)(2). The parties agree that this case is governed by the 1974 regulation, and our opinion today addresses only that regulation.

 In § 951 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 117 Stat. 2427, Congress required the Secretary to furnish hospitals with the data necessary to compute their own disproportionate share adjustment. Pursuant to this congressional mandate, the Secretary has adopted procedures for turning over the SSI data to hospitals upon request. 70 Fed. Reg. 47438 (2005).

 Because no party takes the view that the statutory 180-day time limit is jurisdictional, we appointed John F. Manning to brief and argue this position as amicus curiae. 567 U. S. 955 (2012). Amicus Manning has *153 ably discharged his assigned responsibilities and the Court thanks him for his well-stated arguments.

 Because neither the Secretary nor the intermediary counts as a party to the intermediary’s determination, 42 CFR §405.1806, providers alone are subject to this exception to the time limitation.

 The fraud exception apart, reopening time is limited to three years. § 405.1885(a). Within that time, reopening may be sought by the intermediary, the Board, the Secretary, or the provider. Thus an intermediary determination or Board decision could not be reopened if, outside the three-year window, the Secretary discovered errors in calculating the SSI fraction that resulted in overpayments to providers.