In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3189

GABRIELA ARTEAGA, individually and
as the representative of I.G., a minor,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 7767—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED FEBRUARY 11, 2013—DECIDED APRIL 1, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and
TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.   The plaintiff in this medical
malpractice case is the mother of a child who was
injured during birth. The district court dismissed the
suit as barred by the provision of the Federal Tort
Claims Act that requires that the claim on which a
suit is based be filed with the appropriate federal

agency within two years after the claim arose. 28 U.S.C. §2401(b).

The suit accuses the Erie Family Health Center, where the mother received prenatal care, of neglecting symptoms indicating that at birth the baby would weigh too much for a vaginal delivery to be safe, and of failing to advise the mother to have, therefore, a Caesarean section instead. In the course of the vaginal delivery the baby's shoulder became stuck in the mother's pelvis (the condition known as shoulder dystocia) because the baby was oversized (she weighed 11 pounds). During the delivery nerves in the baby's shoulder were injured (what is called a brachial plexus injury), resulting in a limited range of movement in her right arm, a condition that apparently has persisted.

The child was born in July 2004. A few months later her mother obtained the medical records of the birth and resulting injury and consulted a lawyer. The lawyer recommended against suing. He told her he "did not feel that there could be any legal action taken against the hospital. . . . [I]t appeared that the midwife did everything she could for the delivery and what happened to [the child] was an accident."

Fifteen months later, in October 2006, the mother consulted another lawyer. The following month he agreed to represent her, but 16 months later, in February 2008, he withdrew. He did tell her before withdrawing that if she filed a tort suit under Illinois law the statute of limitations would be eight years because her injured child was a minor. 735 ILCS 5/13-212(b). But though correct the

advice was misleading. The extension of the statute of limitations for a suit on behalf of a child victim doesn't apply to claims governed by the Federal Tort Claims Act, which lacks a comparable provision. *McCall ex rel. Estate of Bess v. United States*, 310 F.3d 984, 987-88 (7th Cir. 2002); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 191-92 (3d Cir. 2009); *Leonhard v. United States*, 633 F.2d 599, 624 (2d Cir. 1980).

In June of the following year (2009) the mother consulted a third lawyer, who quickly referred her to a fourth and final one. This lawyer agreed to take her case. He obtained a medical opinion, based on the child's records, that Erie employees may have caused the child's injury and if so that it had been because they'd been negligent. In March 2010 the mother filed a malpractice suit in an Illinois state court against the Erie Family Health Center and the Center's nurse-midwives who had provided her prenatal care.

Erie is a private enterprise, but it receives grant money from the U.S. Public Health Service. As a result, its employees are deemed federal employees. 42 U.S.C. §§ 233(g)(1)(A), (g)(4); U.S. Dep't of Health & Human Services, Health Resources and Services Administration, "FTCA for Health Centers," http://bphc.hrsa.gov/ftca/ healthcenters/index.html (visited March 6, 2013); *Lomando v. United States*, 667 F.3d 363, 371-72 (3d Cir. 2011); *Dedrick v. Youngblood*, 200 F.3d 744, 744-46 (11th Cir. 2000). Therefore tort suits against it or its employees can be maintained only under the Federal Tort Claims Act. 42 U.S.C. §§ 233(a), (g)(1)(A). The plaintiff did not know this, and neither, it seems, did any

of the four lawyers until April 2010, when a lawyer from another firm told the fourth lawyer that he was in the wrong court. The lawyer filed the requisite federal administrative claim (a prerequisite to suing under the Tort Claims Act, see 28 U.S.C. § 2675(a)) with the Department of Health and Human Services the following month. In August 2010 the government removed the suit to the federal district court in Chicago. That court dismissed the suit, without prejudice, on the ground that the plaintiff had failed to exhaust her administrative remedies.

She exhausted them later. The failure of the Department of Health and Human Services to act on her administrative claim within six months entitled her to treat it as denied, 28 U.S.C. § 2675(a), and she was able, by virtue of the Federal Employees Liability Reform & Tort Compensation Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (the "Westfall Act"); see 28 U.S.C. §§ 2679(d)(2), (5); *Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82-83 (2d Cir. 2005), to refile the suit in the district court under the Federal Tort Claims Act. She did so in December 2010. But the government moved to dismiss the suit on the ground that the two-year statute of limitations had expired before the original malpractice suit had been filed and that therefore the administrative claim, treated by 28 U.S.C. § 2679(d)(5)(A) as if filed on the date on which the original malpractice suit had been filed, had been filed too late for her suit under the Federal Tort Claims Act to be timely.

The plaintiff argues that her claim didn't accrue (that is, the statute of limitations didn't begin to run) until

December 2009, when, she claims, she first learned that negligence by her prenatal caregivers at Erie had caused the baby's injury. But all that is required to start the statute of limitations running is knowledge of the injury and that the defendant or an employee of the defendant acting within the scope of his or her employment may have caused the injury. *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979); *Arroyo v. United States*, 656 F.3d 663, 668-69 (7th Cir. 2011); *Massey v. United States*, 312 F.3d 272, 276-77 (7th Cir. 2002); *Skwira v. United States*, 344 F.3d 64, 74 (1st Cir. 2003). The plaintiff learned those things shortly after she gave birth. By the following year, 2005, having suspected from the start that the injury had been preventable and having obtained the pertinent medical records and given them to a lawyer to review, she made herself subject to the ancillary principle that the statute of limitations begins to run not only when the prospective plaintiff discovers who caused the injury but also "when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause," *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985), or equivalently "when a reasonable person would know enough to prompt a deeper inquiry into a potential cause." *Nemmers v. United States*, 795 F.2d 628, 631-32 (7th Cir. 1986); cf. *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 935 (8th Cir. 2002).

The plaintiff argues that her claim didn't accrue until she learned that Erie could be sued for malpractice only under the Federal Tort Claims Act. That argument

fails too. *Hensley v. United States*, 531 F.3d 1052, 1056-57 (9th Cir. 2008); *Skwira v. United States*, *supra*, 344 F.3d at 76-77; *Gould v. United States Department of Health & Human Services*, 905 F.2d 738, 743-45 (4th Cir. 1990) (en banc). The thinking that underlies *Kubrick* and the cases following it, which require knowledge only of injury and of the likely cause of the injury to start the statute of limitations running, is that armed with such knowledge the prospective plaintiff should be able to discover within the statutory limitations period the rest of the facts needed for drafting a complaint that will withstand a motion to dismiss. That the defendant is suable only under the Federal Tort Claims Act is one of those facts.

The plaintiff's first lawyer dropped the ball. The plaintiff dropped the ball too, by failing to consult another lawyer until October of the following year. That lawyer dawdled, eventually withdrawing, as we noted, in February 2008. It was not until June of the following year that she consulted a third lawyer, who referred her to her fourth and last lawyer.

Statutes of limitations serve an important social purpose, and prospective plaintiffs have been assigned a role in enabling them to serve that purpose. The role is to be diligent. The plaintiff was diligent until July 2005, when having consulted a lawyer who declined the case she confided her continuing suspicions to a social worker, who advised her to get a second legal opinion. It was good advice. But it took the plaintiff 15 months to act on it by contacting another lawyer (presumably

through the referral service suggested by the social worker). By the time he declined the case and she retained her current lawyer, it was a month short of five years after the birth. And by the time her tort suit was filed (in the wrong court, moreover), almost six years had elapsed.

She argues in the alternative (to her argument that her claim did not accrue until she learned of Erie's federal status) that the running of the statute of limitations was suspended ("tolled") until she discovered that Erie could be sued for medical malpractice only under the Federal Torts Claims Act, which required that the suit be brought in federal court after exhaustion of federal administrative remedies. She argues that the Erie Family Health Center conceals its federal status and hence the shorter statute of limitations governing suits than the comparable state statute, eight years in the case of a minor. Tolling takes for granted when the statute of limitations began to run (the accrual date, when the plaintiff discovered or should in the exercise of diligence have discovered injury and cause), but arrests its running.

There is a threshold question: whether a statute of limitations governing suits against a federal agency can ever be tolled. The government says no; it has sovereign immunity from being sued, and waivers of sovereign immunity must be explicit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Edwards v. U.S. Department of Justice*, 43 F.3d 312, 317 (7th Cir. 1994); *Freeman v. United States*, 556 F.3d 326, 334-35 (5th Cir. 2009); cf. *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 95-96 (1990). Tolling doctrines normally are common law grafts on

statutes of limitations. If applied to suits against the government, they increase the scope of its liability by allowing suits to be filed after the prescribed time limit, and they thus curtail sovereign immunity.

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-38 (2008), holds that statutes of limitations intended to preserve the government's sovereign immunity are jurisdictional and therefore not subject to equitable tolling. But *Irwin v. Department of Veteran Affairs*, *supra*, 498 U.S. at 95-96—inexcusably not cited by the government—holds "that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." The opinion in *John R. Sand & Gravel* actually reaffirms the presumption that equitable tolling applies to statutes of limitations in suits against the government, while emphasizing that the presumption is rebuttable. 552 U.S. at 137-38.

And just months ago, in another decision not cited by the government (though the decision had been rendered a month before the oral argument in this case), the Supreme Court held that a deadline for exhausting administrative remedies in a Medicare suit against the government was not jurisdictional. "We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'" *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817, 824 (2013). With regard to the Federal Tort Claims Act, the presumption that the

deadline for exhausting remedies is not jurisdictional, far from being rebutted by clear statutory language, is confirmed by such language: "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and *to the same extent as a private individual under like circumstances*." 28 U.S.C. § 2674 (emphasis added).

We are mindful of conflicting views in the courts of appeal concerning whether the statute of limitations governing tort claims against the federal government can be tolled. See *Arroyo v. United States*, *supra*, 656 F.3d at 679 (concurring opinion); compare *Santos ex rel. Beato v. United States*, *supra*, 559 F.3d at 196-97, with *Marley v. United States*, 567 F.3d 1030, 1036-37 (9th Cir. 2009). But we think the answer is that it can be tolled—and we doubt that the contrary approach has survived the Supreme Court's decision in the *Auburn Regional Medical Center* case.

Bolstering this conclusion is the fact that as a practical matter the discovery rule extends the statute of limitations by delaying the date on which it begins to run. Yet despite the rule's being a common law rule rather than part of the Federal Tort Claims Act, it has long been accepted as fully applicable to suits under the Act. See, e.g., *United States v. Kubrick, supra*, 444 U.S. at 119-21 and n. 7; *Arroyo v. United States, supra*, 656 F.3d at 668; *Litif v. United States*, 670 F.3d 39, 43-44 (1st Cir. 2012); *A.C.Q. ex rel. Castillo v. United States*, 656 F.3d 135, 139-40 (2d Cir. 2011).

Were Erie concealing its status in order to deceive potential plaintiffs into thinking the applicable statute of

limitations longer than it is, we would be in the domain not of equitable tolling but of equitable estoppel, which tolls a statute of limitations when for example the defendant took improper steps to delay the filing of the suit beyond the statutory deadline, as by falsely promising not to plead the statute of limitations. See, e.g., *Irwin v. Department of Veterans' Affairs, supra*, 498 U.S. at 96 and n. 4; *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013); *Shropshear v. Corporation Counsel for the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001); *Ramirez-Carlo v. United States*, 496 F.3d 41, 48-49 and n. 3 (1st Cir. 2007); *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010); *Garza v. U.S. Bureau of Prisons, supra*, 284 F.3d at 935. Indeed we would have a classic case of "fraudulent concealment," often used as a synonym for conduct giving rise to such an estoppel.

But Erie didn't conceal its federal status, though neither did it disclose it. The government argues that it did disclose it, by stating on its website that "Erie is a founding partner of [the Alliance of Chicago Community Health Services], which is comprised of four federally funded Chicago health centers." That is what the website says today; the government should have told us what it said in 2005, when the plaintiff was first thinking about the possibility of suing. Actually the 2005 version was a bit more emphatic about Erie's being federally funded. It said that "Erie was formally incorporated and in 1983, Erie was designated a Federally Qualified Health Center (FQHC) after receiving its first federal grant from the U.S. Department of Health and Human Services Bureau of Primary Health Care." Erie Family

Health Center, Inc. "History" (archived version of the website as of Mar. 6, 2005), http://web.archive.org/web/20050306234109/http://www.eriefamilyhealth.org/history.htm (visited March 20, 2013).

But there is a gap between disclosing receipt of federal funding and revealing that as a recipient one can be sued for torts only under the Federal Tort Claims Act and not under state law. It's not even clear what disclosure would be thought adequate to warn potential malpractice plaintiffs of the legal consequences of Erie's status. Would Erie have to disclose (and just on its website?) that anyone contemplating a malpractice suit should take note that he or she must sue in federal court and there face a two-year statute of limitations, subject however to equitable tolling and equitable estoppel, whatever those terms might mean to laypersons? No physician, clinic, hospital, or other medical provider is required to provide patients with detailed instructions on how to sue the provider for malpractice.

Erie's peculiar status under the Public Health Service Act is no secret. The website of the Public Health Service identifies all the health centers that by virtue of receiving funds from the Service may be sued for malpractice only under the Federal Tort Claims Act. U.S. Dep't of Health & Human Services, Health Resources and Services Administration, "Search Deemed Health Centers," http://bphc.hrsa.gov/ftca/healthcenters/ftcahcdeemedentitysearch.html (visited March 17, 2013). Members of the medical malpractice bar should know enough to consult the website when approached by a prospective client.

Prospective plaintiffs are charged with knowledge that there are such things as statutes of limitations, and so if you think you may have a legal claim it behooves you to consult a lawyer, and it behooves him to ascertain the applicable statute of limitations and advise you of it. *Keef v. Widuch*, 747 N.E.2d 992, 1000 (Ill. App. 2001). If the lawyer fails in this duty, the remedy is not to punish the defendant by depriving him of the protection of the statute of limitations; it is for the plaintiff to sue the lawyer who misadvised him for legal malpractice. *Id.* "That an attorney's conduct of the suit is inadequate may be grounds for a malpractice action against the attorney, but it is certainly no basis for requiring the defendant to pay the price of opposing counsel's dereliction." *National Ass'n of Government Employees v. City Public Service Board of San Antonio*, 40 F.3d 698, 709 (5th Cir. 1994); see also *Link v. Wabash R.R.*, 370 U.S. 626, 634 n. 10 (1962); *Taliani v. Chans*, 189 F.3d 597, 597-98 (7th Cir. 1999).

It's not asking too much of the medical malpractice bar to be aware of the existence of federally funded health centers that can be sued for malpractice only under the Federal Tort Claims Act—there are at least three such centers in Chicago besides Erie—and if a member of that bar is not aware and misleads a client, as lawyer number two did in this case by advising the plaintiff that the applicable statute of limitations was eight years, the lawyer may be liable for legal malpractice but the government can still invoke the statute of limitations.

Remarkably, when that lawyer advised the plaintiff that the applicable statute of limitations was eight years, his law firm—Salvi, Schostok & Pritchard, P.C.—was representing another former patient of the Erie Family Health Center in a malpractice suit against Erie in the same federal district court. That suit, *Arroyo v. United States*, *supra*, had been filed in 2007, well before the mistaken advice given by the law firm to our plaintiff. Equitable tolling cannot be premised on the incompetence of the plaintiff's lawyer.

We are not suggesting that equitable tolling can never be used to excuse a plaintiff's failing to discover the federal status of a provider of health services. For consider *Santos ex rel. Beato v. United States*, *supra*. Within months of her child's injury in that case the mother retained a lawyer who promptly identified the healthcare workers suspected of causing the injury, and performed a search of the public records of their employer, York Health, but without success. The state court suit in that case was filed only five months after the two-year federal statute of limitations had expired. The name of the provider—York Health Corporation—sounded like the name of an enterprise whose employees were private rather than government employees, and the court stated that there was no "publicly available information" that would have revealed that the employees were deemed federal for purposes of malpractice suits, *id*. at 192; there was no reference to a website containing that information. Had the plaintiff's lawyers in the present case exercised proper diligence yet failed to uncover Erie's federal status, she would have an argu-

ment for equitable tolling. See *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002); *Gonzalez v. United States*, 284 F.3d 281, 291-92 (1st Cir.2002); *Gould v. U.S. Department of Health & Human Services*, *supra*, 905 F.2d at 745-46; cf. *Valdez ex rel. Doneley v. United States*, 518 F.3d 173, 182-85 (2d Cir. 2008). None of them did.

The judgment for the defendant is

AFFIRMED.