*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CO-0100

MARQUETTE E. RILEY, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(1997-FEL-002594)

(Hon. Craig Iscoe, Motions Judge)

(Submitted January 15, 2025          Decided July 3, 2025)

*Brian D. Shefferman* was on the brief for appellant.

*Stephen B. Snyder*, Assistant United States Attorney, with whom *Matthew Graves*, United States Attorney at the time the brief was filed, and *Chrisellen R. Kolb*, *John P. Mannarino*, *Thomas Stutsman*, Assistant United States Attorneys, were on the brief, for appellee.

Before DEAHL and SHANKER, *Associate Judges*, and STEADMAN, *Senior Judge*.

DEAHL, *Associate Judge*: This is an appeal from a partial denial of relief under the Incarceration Reduction Amendment Act, or IRAA. Appellant Marquette E. Riley's primary argument on appeal is that the trial court erroneously relied on non-IRAA statutes and the factors therein to deny his request for immediate release.

Because our recent decision in *Doe v. United States* squarely held that was error, and the government has made no argument that the error was harmless, we vacate the trial court's decision and remand for further proceedings consistent with *Doe* and this opinion. 333 A.3d 893 (D.C. 2025).

## I. Factual and Procedural Background

In 1996, when Riley was sixteen years old, he and two others—an eighteen- and nineteen-year-old—were driving around the District looking for members of a "rival crew" when they shot and killed two young brothers who were playing in a front yard. A couple of weeks earlier, Riley and those same teenagers were driving around in Maryland with the same aim when the nineteen-year-old shot and killed someone.

For the Maryland killing, Riley pled guilty to first-degree murder and using a firearm during the commission of a felony, and was sentenced to life in prison. For the D.C. killings, a jury convicted Riley of two counts of first-degree murder while armed, assault with intent to kill while armed, and possession of a firearm during a crime of violence. Riley received sentences of thirty years to life on each murder count, ten to thirty years for AWIKWA, and five to fifteen years for PFCV. The murder and AWIKWA sentences ran consecutive to each other as well as consecutive to the Maryland sentence, while the PFCV sentence ran concurrently.

We affirmed his convictions on direct appeal. *Riley v. United States*, 923 A.2d 868 (D.C. 2007).

In 2022, Riley filed an IRAA motion requesting his immediate release. IRAA requires a trial court to "reduce a term of imprisonment" for an eligible movant if they are no longer "a danger to the safety of any person or the community" and "the interests of justice warrant a sentence modification." D.C. Code § 24-403.03(a)(2). In assessing those questions, the trial judge must consider ten statutory factors, plus an eleventh catch-all factor accounting for "[a]ny other information the court deems relevant." *Id.* § 24-403.03(c)(1-11);[1] *see Doe*, 333 A.3d at 899-900 (explaining process of applying IRAA's "merits criteria").

---

[1] The ten factors are:

(1) The defendant's age at the time of the offense;

(2) The history and characteristics of the defendant;

(3) Whether the defendant has substantially complied with the rules of the institution to which the defendant has been confined, and whether the defendant has completed any educational, vocational, or other program, where available;

(4) Any report or recommendation received from the United States Attorney;

(5) Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction;

In support of his motion, Riley argued that he had demonstrated rehabilitation and a "read[iness] to become a positive and contributing member of society."  He highlighted, among other things, his nearly perfect disciplinary record, positive mental health evaluations, and active program participation while incarcerated. Riley also gave context for his crime—he noted that he was only sixteen at the time and had been "recruited" by older teenagers in his neighborhood to participate in the murders.   He further highlighted trial testimony indicating that his gun was "jammed" during the offenses, and that the shootings were "primarily perpetrated" by his nineteen-year-old codefendant.

---

(6) Any statement, provided orally or in writing, provided pursuant to § 23-1904 or 18 U.S.C. § 3771 by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased;

(7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;

(8) The defendant's family and community circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;

(9) The extent of the defendant's role in the offense and whether and to what extent another person was involved in the offense;

(10) The diminished culpability of juveniles and persons under age 25, as compared to that of older adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to lengthy terms in prison, despite the brutality or cold-blooded nature of any particular crime, and the defendant's personal circumstances that support an aging out of crime.

While his IRAA motion was pending, a Maryland court granted Riley's motion for a sentence reduction in the Maryland murder case under that state's IRAA equivalent, the Juvenile Restoration Act. *See* Md. Code Ann., Crim. Proc. § 8-110. The Maryland court reduced Riley's sentence to time served plus ninety days. Riley was then transferred to the District's custody where his D.C. sentence—which amounted to seventy years to life—began to run.

In response to Riley's IRAA motion, the government did not oppose a reduction in his sentence outright, but requested that Riley's overall D.C. sentence be reduced to a term of twelve years to life (as opposed to his request for time served). The government agreed with many of Riley's arguments—it acknowledged that he "has demonstrated overall positive prison conduct" and "did not hold an aggravating role" in any of the murders—but said that the "interests of justice" requirement under IRAA required a greater prison term for the "horrific" and "egregious" D.C. murders, which Riley had only just begun to serve.

The trial court held an evidentiary hearing on Riley's IRAA motion in October 2023, where much of the discussion centered on what IRAA's "interests of justice" standard entails. The government said there were no "specific factors" to consider in assessing that standard, and that the court should consider whether it would be "fair" for Riley to serve only a few months in prison for the D.C. murders. The defense countered that the interests of justice reflect "the whole purpose of the IRAA

statute," the movant's "maturity and rehabilitation," and "victim impact and other circumstances," and that the court should take into account the nearly twenty-eight years that Riley spent in prison for the "related" Maryland murder. Separately, in the event the trial court would decide to not immediately release Riley, defense counsel asked the court in the alternative "to enter a determinate sentence" that is "not tied to parole eligibility."

The trial court granted in part and denied in part Riley's motion both at a November 2023 hearing and in a subsequent written ruling. We recount the trial court's relevant analysis in the written ruling, which the trial court said would "control" and would represent a more detailed account of its "factual findings" and "reasons."[2]

The court first went through the eleven IRAA factors, determining that most of them weighed in favor of reducing Riley's sentence. For example, the court found that factor five—relating to a movant's "maturity, rehabilitation, and a fitness to reenter society," *see* D.C. Code § 24-403.03(c)(5)—cut in Riley's favor given his "impressive record during his incarceration, the mentorship role he has undertaken for other inmates, and his positive relationships with his friends and family outside

---

[2] We focus on the written ruling additionally because IRAA requires trial courts to "issue an opinion in writing stating the reasons for granting or denying the [IRAA] application." D.C. Code. § 24-403.03(b)(4).

of prison." At the same time, the court found that factor two—relating to the "history and characteristics of the defendant," *see id*. § 24-403.03(c)(2)—cut against Riley because of the murder he committed in Maryland about three weeks before the D.C. murders. While the trial court said it had "no basis to dispute" that his "actions" were caused in part by "transient immaturity rather than permanent incorrigibility," it found that his commission of the Maryland murder "raises serious concerns" and "weigh[s] strongly against granting his motion." After discussing the remaining factors, the court stated that Riley overall "met his burden of demonstrating that upon his release he will not present a danger to the safety of any person or the community," referring to the dangerousness prong in D.C. Code § 24-403.03(a)(2).

The trial court then pivoted to the interests of justice analysis, the second prong of subsection (a)(2). Noting that "neither the IRAA statute nor appellate cases provide direct guidance on the precise factors that a court should consider in making an interests of justice determination," the trial court turned to the District's determinate sentencing statute, reasoning the statute would apply if Riley were "to be sentenced for his conviction for first degree murder today." That statute directs sentencing judges to consider "the seriousness of the offense," "the criminal history of the offender," and the need for "just punishment." D.C. Code § 24-403.01(a)(1)-(2). The court determined that these factors—in light of Riley's

convictions for first-degree murders in both Maryland and D.C.—required Riley "to serve an additional period of time" beyond what he had already served.

In determining the extent of that required "period of time," the trial court next cited to Appendix C of the District's Voluntary Sentencing Guidelines Manual. Appendix C provides a chart of the District's sentencing statutes, including D.C. Code § 22-2104, which contains a statutory mandatory minimum sentence of thirty years for first-degree murder. Comparing that thirty-year provision with the fact that Riley had served around twenty-seven years in Maryland prison, the trial court landed on reducing Riley's sentence to time served plus three years and three months. Riley now appeals.

## II. Analysis

We review IRAA determinations for abuse of discretion, *Welch v. United States*, 319 A.3d 971, 975 (D.C. 2024), though we review the various subsidiary statutory interpretation questions underlying these claims de novo, *Long v. United States*, 312 A.3d 1247, 1259-60 (D.C. 2024). In reviewing the ultimate IRAA determination, we consider "whether the decision maker failed to consider a relevant factor, whether the decision maker relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024) (internal quotation marks omitted). A court "by definition

abuses its discretion when it makes an error of law." *Id*. (internal quotation marks omitted).

Riley argues on appeal that the trial court abused its discretion by relying on the District's determinate sentencing scheme, voluntary sentencing guidelines, and retributive rationales when conducting its interests of justice analysis, when instead the court should have looked to IRAA's own enumerated factors as informing those interests. Before reaching this argument and explaining how our intervening decision in *Doe* resolves it, we must address the government's preliminary contention that Riley waived and forfeited the argument as a result of his litigation conduct before the trial court.

*A. Riley did not invite any error and preserved his argument for appeal*

The government argues both that Riley "invited (and thus waived)"[3] and did not preserve (and thus forfeited) his argument that the trial court improperly relied

---

[3] The government asserts that invited errors are "waived," a conflation that has some purchase in our precedents, but is imprecise. The waiver and invited error doctrines are analytically distinct and accompanied by arguably different consequences. Waiver is "the intentional relinquishment or abandonment of a known right." *Akinbi v. United States*, 321 A.3d 634, 639 n.4 (D.C. 2024) (quoting *Chew v. United States*, 314 A.3d 80, 91 (D.C. 2024) (Easterly, J., concurring)). The invited error doctrine applies not upon a showing of a knowing and intelligent waiver, but upon a lesser showing that the appellant somehow induced the trial court into making its misstep. *See United States v. Montgomery*, 998 F.3d 693, 697-98 (6th Cir. 2021) (describing invited error as when a litigant "contributes in some way to the [trial] court's error without intentionally relinquishing" their rights, or when a

on the factors in the determinate sentencing scheme when analyzing the interests of justice. In support of these points, the government respectively highlights: (1) when defense counsel said, "we do ask the [c]ourt to enter a determinate sentence" at the October evidentiary hearing; and (2) when defense counsel failed to object as the trial court said it must fashion a "sentence that reflects the seriousness of the offense and . . . provides for just punishment" in its November oral ruling. We at least generally do not review invited errors, because we follow a prudential practice that we will not second guess "an action that the [complaining] party caused the trial court to take." *EMC Mortg. Corp. v. Patton*, 64 A.3d 182, 186 (D.C. 2013). Merely

---

litigant is "more responsible" when compared to a forfeiture "but has not made the conscious choice to waive the argument"). Some courts and authorities attach different consequences to each doctrine. In some jurisdictions, for instance, appellate courts are barred from considering waived claims, but have some discretion to entertain claims of error that were merely invited. *See id.* at 698 ("We do not review invited errors as a matter of course, but we are also not foreclosed from reviewing them; instead, we review for plain error when 'the interests of justice demand' it." (quoting *United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020))); *see also State v. Alston*, 862 A.2d 817, 831-32 (Conn. 2005) (recognizing possibility of review of "induced error[s]" in cases of "manifest injustice"). Some of our precedents suggest this court likewise retains some discretion to entertain invited errors, but our cases are not consistent on this point. *See, e.g.*, *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 183 (D.C. 1993) (explaining that the invited error doctrine is not "unbending" and "not absolute"); *but see Young v. United States*, 305 A.3d 402, 430 (D.C. 2023) ("[T]he invited error doctrine 'precludes a party from asserting as error on appeal a course that they have induced the trial court to take.'" (quoting *Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007))). We have no cause to resolve any inconsistency in our precedents today since this error was neither waived nor invited.

forfeited errors, meanwhile, are reviewed for plain error. *See Akinbi*, 321 A.3d at 638.

On neither occasion did Riley invite any error or forfeit his claim. First, asking for a determinate sentence is not at all similar to inviting the trial court to consider the substantive factors in the District's determinate sentencing statute, which is Riley's current complaint. And it is clear that defense counsel was asking only for the former. Defense counsel asked that Riley's reduced sentence be to a fixed term that was "not tied to parole eligibility," which was in response to the government's request for an indeterminate term of twelve years to life (with Riley merely being parole eligible, but potentially never released, within that range). Defense counsel did not suggest that the court look to the underlying policy concerns of the determinate sentencing statute—"the seriousness of the offense," "the criminal history of the offender," the need for "just punishment," etc.—when resentencing him under IRAA, which comes with its own distinct statutory factors to consider. So Riley invited no error with respect to the trial court's use of the factors within the determinate sentencing scheme.

Second, prior to the November oral ruling, Riley had alerted the trial court and the government to his view that the interests of justice inquiry under IRAA looks to that statute's own enumerated factors. Riley's motion pointed to the eleven IRAA

factors and his "maturity, remorse, and rehabilitation" as underpinning the interests of justice. And again at the October evidentiary hearing, defense counsel told the trial court that the interests of justice inquiry should look at "the whole purpose of the IRAA statute," a "defendant's maturity and rehabilitation," and "victim impact and other circumstances," again referring to IRAA's enumerated factors. *See* D.C. Code § 24-403.03(c)(5) (movant's "maturity" and "rehabilitation"); (c)(6) (victim impact statements). Riley had thus presented his relevant "thesis" regarding the proper scope of the interests of justice inquiry by the time of the November ruling, preserving his present claim for appeal. *Long*, 312 A.3d at 1257 (quoting *Comford v. United States*, 947 A.2d 1181, 1186 (D.C. 2008)).

We also note that when the trial court first announced that it was considering the "seriousness of the offense" and "just punishment" as relevant to the interests of justice, it was in the middle of the court's extended oral ruling on Riley's IRAA claim. The sole purpose of the November hearing—where the government says Riley forfeited his claim because he did not reiterate an objection to the court's consideration of factors outside of IRAA itself—was to "announce basically what [the trial court's] decision was." The court had already heard Riley's arguments that IRAA's interests of justice inquiry was connected to IRAA's own enumerated factors, and it was in the midst of implicitly rejecting that argument by taking a different course. Riley did not, for preservation's sake, need to interject to remind

the trial court that he disagreed with the court's approach. *See Evans v. United States*, 304 A.3d 211, 222 (D.C. 2023) (preservation does not require parties "to press their positions until blue in the face"). One objection, preserved and ruled on, is enough.

We now turn to the merits.

### B. The trial court erred when it relied on factors outside of, and often contrary to, IRAA's enumerated factors

IRAA says that a trial court "shall reduce a term of imprisonment imposed upon a defendant," D.C. Code § 24-403.03(a), if the movant meets IRAA's "eligibility criteria"[4] and "merits criteria." *Doe*, 333 A.3d at 899. The merits criteria

---

[4] It is undisputed that Riley meets the eligibility requirements: he committed his offense before turning twenty-five and he "has served at least 15 years in prison." D.C. Code § 24-403.03(a)(1). The government conceded below (and does not change its tune on appeal) that Riley's incarceration for his Maryland offenses satisfied the fifteen-years requirement, even though Riley had only served a few months of his D.C. sentence.

The trial court determined that the fifteen-years requirement in subsection (a) is jurisdictional and thus could not be waived by the government, but the court agreed with the government that the Maryland term of incarceration counted toward and satisfied that requirement. We have an "independent obligation to confirm our own jurisdiction before ruling on the merits of a case," *D.C. Dep't of Corr. v. D.C. Dep't of Emp. Servs.*, 308 A.3d 699, 702 (D.C. 2023), and we conclude that the fifteen-years requirement is nonjurisdictional in any event. Subsection (a) "does not speak in jurisdictional terms," and in the statutory context the requirement reads as a substantive criterion for relief that exists alongside the age, dangerousness, and interests of justice requirements. D.C. Code § 24-403.03(a)(1)-(2); *see Sebelius v.*

ask whether the movant "is not a danger to the safety of any person or the community" and whether "the interests of justice warrant a sentence modification," D.C. Code § 24-403.03(a)(2), which are questions that must be guided by the eleven enumerated factors set forth in subsection (c) of the statute. D.C. Code § 24-403.03(c) (providing that the trial court "shall consider" these factors "in determining whether to reduce a term of imprisonment pursuant to subsection (a)"); *Doe*, 333 A.3d at 904-05. The merits criteria cover both the question of whether a sentence reduction is warranted and the question of the extent of that reduction—it is all part of the same one-step process under the statute. *Doe*, 333 A.3d at 904-05.

In *Doe*, which was decided after briefing was completed in this appeal, we clarified that trial courts are not only required to analyze the eleven enumerated factors in the merits inquiry, but they are also limited to considering those factors. Even though the trial court in *Doe* "engaged in a careful review of each of the

---

*Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153-54 (2013) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (relying on the statutory language to decide whether the provision is jurisdictional). Because the D.C. Council has therefore not "clearly state[d]" that the rule is jurisdictional, we "treat the restriction as nonjurisdictional in character." *Sebelius*, 568 U.S. at 153 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 515-16 (2006)). Accordingly, we accept the government's concession and decline to substantively address whether an out-of-state period of incarceration can satisfy IRAA's fifteen-years requirement. *See Zipes*, 455 U.S. at 393 (nonjurisdictional rules are subject to doctrines of "waiver, estoppel, and equitable tolling"); *see generally Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1101-03 (D.C. 2015).

enumerated IRAA factors when assessing dangerousness and the interests of justice," we held that it erred by further relying upon both "a completely separate statute" as well as "the seriousness of [the movant's] crimes as a standalone factor" when deciding to only grant partial relief. *Id.* at 905-08. Considering IRAA's step-by-step framework and the distinct purposes behind the statute, we determined that whether "the interests of justice warrant a sentence modification," which on its own might be interpreted as broad language, "is not an invitation for the trial court to engage in an unconstrained . . . inquiry untethered from the enumerated factors." *Id.* at 910. Therefore, since the IRAA factors occupy the entire field of appropriate considerations, the trial court in *Doe* erred in hinging its interests of justice analysis on D.C. Code § 3-101, an "unrelated" statute that set forth factors, such as the "[s]eriousness of the offense," for the D.C. Sentencing Commission to consider when promulgating sentencing guidelines. *Id.* at 909.

Here, we agree with Riley that the trial court erred when it committed the same error we identified in *Doe*. After finding that most IRAA factors weighed in Riley's favor and that Riley was not presently dangerous, the trial court looked exclusively to other authorities to inform its "interests of justice" calculus—like the District's determinate sentencing statute—rather than the IRAA factors themselves. The trial court then expressly relied on the determinate sentencing statute's requirement that courts consider "the seriousness of the offense," the defendant's

"criminal history," and the need "for just punishment," D.C. Code § 24-403.01(a), and determined that those factors required "Riley to serve an additional period of time in custody." The trial court further relied upon D.C. Code § 22-2104, which contains a thirty-year mandatory minimum sentence for adults convicted of first-degree murder, to come to its determination that Riley should spend around three more years in prison (he had been incarcerated for roughly twenty-seven years at that point). Simply put, IRAA provides the list of factors that trial courts may look to when assessing an applicant's dangerousness and the interests of justice. When the trial court here looked beyond IRAA to the sentencing goals captured by distinct statutes, it erred by relying on improper factors.[5]

By stressing "the seriousness of the offense" and the need for "just punishment" when resentencing Riley, the trial court relied on factors that were not only outside of what IRAA enumerates, but that run contrary to IRAA's purpose. As we noted in *Doe*, the D.C. Council actually removed "nature of the offense" language from IRAA after that factor was, in its view, too frequently used to deny relief despite evidence that movants were rehabilitated and otherwise should be

---

[5] Subsection (e) of IRAA does contain references to both the District's indeterminate and determinate sentencing statutes, but only to say that in any IRAA resentencing, courts should impose the same type of sentence (i.e., a range of years or a fixed term) that the movant received when they were originally sentenced. D.C. Code § 24-403.03(e); *Doe*, 333 A.3d at 906 (citing Comprehensive Youth Justice Amendment Act of 2016, D.C. Bill No. 21-0683, Amendment #1, (Nov. 1, 2016)).

entitled to a sentence reduction. 333 A.3d at 906-07 (citing Omnibus Public Safety and Justice Amendment Act of 2020, Report on Bill No. 23-0127 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia, at 19 (Nov. 23, 2020)). We also said that "just punishment" is not a salient IRAA consideration because IRAA's "very terms . . . provide[] a framework for a significant reduction of a sentence that, according to the initial sentencing judge, fit the serious, heinous nature of the crime." *Id.* at 907. IRAA takes as a given that movants have served lengthy prison terms for severe offenses, so the trial court's focus on retributive concerns at odds with IRAA was misplaced.

The trial court's reliance upon the current mandatory minimum for first-degree murder was also at odds with the structure and foundations of IRAA. For one, IRAA allows trial courts to "issue a sentence less than the minimum term otherwise required by law" when granting relief. D.C. Code § 24-403.03(e)(2)(A).[6] This is a clear indication that the D.C. Council wanted trial courts to look away from statutes containing mandatory minima and to focus on the merits criteria contained within IRAA. Second, the trial court erroneously hypothesized that the thirty-year

---

[6] The trial court clearly understood that it was not required to resentence Riley to minimum of thirty years—it displayed no misunderstanding there. The court's reasoning was rather that the thirty-year mandatory minimum merely provided some authority for its view that it would be in the interests of justice for Riley to serve at least thirty years on the trio of murders.

mandatory minimum for first-degree murder would apply if Riley was sentenced today. That's not right. District law in fact allows for a downward departure from that minimum "if the person committed the offense . . . while under 18 years of age," *Id.* § 24-403.01(c)(2), so that even if Riley were initially sentenced today, the fact that he committed these offenses before the age of eighteen would render the mandatory minimum inapplicable to him. This miscalculation was more than a mere technicality—the District's sentencing laws now reflect the "diminished culpability of juveniles" in myriad ways. *See, e.g.*, Comprehensive Youth Justice Amendment Act of 2016, Report on Bill No. 21-0683 before the Committee on the Judiciary, Council of the District of Columbia, at 12-14 (Oct. 5, 2016) (citing the social and biological realities of youth in support of both eliminating mandatory minimums for juveniles and creating IRAA). And of course, even if today's sixteen-year-old received a thirty-year sentence, they too would be eligible to seek IRAA relief after half of that term, barring some statutory amendment or repeal.

### C. The error was harmful and merits reversal

The government has not disputed that the above errors were harmful, and we therefore vacate and remand for reconsideration. *See Wheeler v. United States*, 930 A.2d 232, 246 (D.C. 2007) (government has the burden of persuasion in harmless error analysis); *Smith v. United States*, 283 A.3d 88, 99 (D.C. 2022) (remanding for

the trial court to vacate conviction after the government failed to make any argument that the error was harmless).

*So ordered.*