#30255-a-SRJ
**2025 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RONALD STOCK and
KRISTIN STOCK,                                       Plaintiffs and Appellees,

v.

JAMES E. GARRETT, SANDRA E.
GARRETT, and LEVI E. GARRETT,              Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
SULLY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRISTINA L. KLINGER
Judge

\* \* \* \*

ELLIOT J. BLOOM
STEVEN C. BEARDSLEY
MICHAEL S. BEARDSLEY of
Beardsley Jensen & Lee, Prof. LLC
Rapid City, South Dakota                    Attorneys for defendants
                                            and appellants.


ANDREW S. HURD
JAMES S. SIMKO of
Cadwell, Sanford, Deibert
   & Garry, LLP
Sioux Falls, South Dakota                   Attorneys for plaintiffs
                                            and appellees.

\* \* \* \*

ARGUED
NOVEMBER 9, 2023
OPINION FILED **02/12/25**

#30255

JENSEN, Chief Justice

[¶1.]    Facing significant, delinquent indebtedness, James, Sandra, and Levi Garrett (collectively the Garretts) agreed to sell their farmland to Ronald and Kristin Stock (collectively the Stocks).  In return, the Stocks agreed to lease the farmland back to the Garretts for five years.  The lease also provided the Garretts with an option to purchase the farmland from the Stocks during the term of the lease.  Approximately two years into the lease, the Stocks commenced an eviction action for possession of the farmland, alleging the Garretts had failed to make timely lease payments and committed waste.  After a two-day trial, the jury entered a verdict in favor of the Stocks for immediate possession of the farmland.  The Garretts appeal, alleging the circuit court erred by denying their motion to dismiss, their motion for judgment as a matter of law, and their motion for a new trial.  The Garretts also argue the court erred in denying their proposed jury instructions.  The Stocks filed a motion to dismiss the appeal arguing this Court lacks appellate jurisdiction.  We affirm.

**Factual and Procedural Background**

[¶2.]    The Garretts owned 5,200 acres of farmland (the Property) in Sully County.  The Garretts experienced financial difficulties and eventually filed for bankruptcy.  In lieu of seeking confirmation of a bankruptcy plan of reorganization, the Garretts began considering other options to resolve their outstanding debt.  One of these alternatives included selling the Property, which the Garretts claim had significant equity.

-1-

[¶3.]        The Garretts were approached by Ronald Stock, a resident of Columbus, Nebraska, who offered to purchase the Property from the Garretts.  The Stocks and the Garretts eventually agreed to terms on the sale of the Property and executed three separate agreements on June 20, 2019.  The agreements included a real estate purchase agreement (purchase agreement), a farm lease agreement (lease agreement), and a closing/escrow agreement (escrow agreement).[1]  The purchase agreement provided for the Stocks to purchase the Property from the Garretts for a price of $10,010,000.  The Stocks also granted the Garretts "an exclusive irrevocable lease on the [P]roperty for a term beginning on June 20, 2019, and terminating on December 31, 2024."  The Garretts were also given "an option to repurchase [the Property for $10,410,000, plus $185,000 for each year the Property was leased from the Stocks], conditioned upon the Garretts meeting all obligations described in [the purchase] agreement[.]"  The purchase agreement also provided that the Stocks would finance their purchase by obtaining a mortgage on the Property through Rabo AgriFinance (Rabo).  The mortgage required semi-annual payments to Rabo which were due in May and November of each year.

[¶4.]        The lease agreement required the Garretts to make annual lease payments by June 20 of each year, with the first payment due June 20, 2020.  The annual lease payment was "equal to two semi-annual mortgage payments as . . . shown on the Rabo [] amortization schedule."  Because the first lease payment was not due until June 20, 2020, the Stocks were responsible for making the first mortgage payment in November 2019.  All three agreements provided that the

---

1.        The agreements were drafted by counsel for the Garretts.

remaining Rabo mortgage payments would be paid from an escrow account that was created to collect the Garretts' lease payments.

[¶5.]     The escrow agreement set forth the procedures for closing on the purchase of the Property and managing the Garretts' annual lease payments, which were required to be paid to the escrow agent. After receiving the Garretts' lease payment, the escrow agent was required to send "each payment to Rabo [] as mortgage payments." BankWest of Pierre (Escrow Agent) was named as the escrow agent.

[¶6.]     All three agreements provided that "[i]f any annual payment is not paid on or before June 20 of each year then the lease shall terminate immediately and the purchase option provided in this agreement will be void." However, the lease agreement also included a default provision, which provided that "[i]n case of a default in the payment of any lease payment, the [Garretts] shall have the right to cure the default or breach upon the same being corrected upon sixty (60) days' notice." The provision stated that if the Garretts failed to cure the default within sixty days of receiving written notice, "then this lease shall terminate at the option of [the Stocks.]" The lease agreement required that any notice from the Stocks "be made by the escrow agent effective upon delivery to the [Garretts]."

[¶7.]     Consistent with the terms of the agreements, the Stocks made the first mortgage payment to Rabo in November 2019. Before the second mortgage payment became due in May 2020, Ronald contacted the Escrow Agent to inquire whether there were any funds in the escrow account. The Escrow Agent informed Ronald that it had not received any payments and that there were no funds in the

escrow account. To avoid default on the mortgage, the Stocks personally made the second mortgage payment to Rabo in May 2020. The Garretts did not pay the first annual lease payment, due on June 20, 2020, to the Escrow Agent. Instead, the Garretts issued a check payable to Rabo for the amount of the lease payment and delivered it to the Escrow Agent in June 2020. The Escrow Agent forwarded the check to Rabo, but Rabo returned the check because the Stocks had already paid the mortgage payment. The Garretts made no other effort to pay the June 2020 lease payment to the Escrow Agent.

[¶8.] In December 2020, the Garretts made a partial payment of the June 20, 2020, lease payment by directly making a payment to Rabo for the amount equal to the Stocks' December 2020 mortgage payment. Following a mediation between the Garretts and the Stocks, the Garretts made an additional payment directly to the Stocks in April 2021. The December 2020 and April 2021 payments were equal to the amount that was due under the lease agreement in June 2020.

[¶9.] The Garretts never paid the second lease payment to the Escrow Agent that was due on June 20, 2021. On August 27, 2021, the Stocks sent the Garretts a notice of default and a letter stating that the default had to be cured by October 15, 2021. The notice stated that if the Garretts failed to cure by October 15, 2021, the lease would terminate on March 1, 2022. The Garretts did not respond to the notice and have not made any lease payments since the notice was delivered.[2]

---

2. At trial, the Garretts claimed that they attempted to make an additional partial payment directly to Rabo in November 2021, however these funds were rejected because the mortgage payment was already paid by the Stocks. The Stocks responded that the Garretts were required to make their

(continued . . .)

[¶10.] On September 3, 2021, the Stocks entered into a settlement agreement involving a boundary dispute with a neighboring landowner to the Property. The neighboring landowner had commenced an action against the Garretts in 2016 alleging that the Garretts' fence wrongfully encroached upon their property by 33 feet at certain locations along the Property. Under the terms of the settlement agreement, the Stocks agreed, based upon a survey, that the neighbor owned the disputed property and the boundary line would be re-fenced in accordance with the survey. In return, the lawsuit against the Garretts was dismissed.

[¶11.] The Garretts commenced an action in the Federal District Court for the District of South Dakota in January 2022, alleging the Stocks breached the agreements by paying the mortgage payments to Rabo, which prevented the Garretts from making lease payments. The Garretts also claimed the Stocks had breached the lease agreement by conveying a portion of the Property to the neighboring landowner under the settlement agreement. The Stocks filed an answer and counterclaim seeking a declaratory judgment that the lease agreement had terminated and sought collection of the outstanding lease payments.

[¶12.] On May 19, 2022, the Stocks received a letter from the Sully County weed and pest supervisor concerning a Canadian thistle infestation on the Property that violated county ordinances. The letter informed the Stocks that a fine would be imposed if the weed issue was not timely resolved. The Stocks hired someone to enter the Property and disc the weeds. The Garretts subsequently amended their

---

(. . . continued)
payments to the Escrow Agent, and their attempts to directly pay Rabo were inconsistent with the terms of their agreement.

federal court complaint to further allege that the Stocks breached the lease agreement by entering the Property to disc the weeds without permission.

[¶13.] On July 1, 2022, the Stocks served the Garretts with a notice to quit pursuant to SDCL 21-16-2. On July 6, 2022, the Stocks served the Garretts with a verified complaint for forcible entry and detainer seeking immediate possession of the Property. The complaint alleged, as grounds for the eviction action under SDCL 21-16-1(4), that the Garretts breached the lease agreement by failing to pay rent, and "by abandoning the [Property], committing waste on the [Property], and by failing to plant crops before insurance deadlines." The Garretts filed a motion to dismiss, alleging that the Stocks: (1) failed to provide a notice of three days before commencing the action, as required by SDCL 21-16-2(4); (2) failed to request mandatory mediation before commencing the action, as required by SDCL 54-13-10; and (3) did not provide a sixty-day notice of default, as required by the lease agreement. The Garretts also argued in the motion that because of the pending federal court action, the Stocks were precluded from splitting their claims by bringing a state action. The circuit court denied the Garretts' motion to dismiss.

[¶14.] During a two-day jury trial, the Stocks presented evidence that the Garretts breached the lease by failing to pay rent. The Stocks also presented evidence that the Garretts had not planted crops on the land during the 2021 and 2022 crop years and had allowed a significant infestation of Canadian thistle that the Sully County weed supervisor described as "[o]ne of the worst I've seen." The Garretts claimed that the Stocks breached the lease agreement by preventing the Garretts from making lease payments, conveying a portion of the Property to

neighbors under the settlement agreement, and entering the Property to disc weeds without the Garretts' consent. The court denied the motions for judgment as a matter of law made by both parties. The jury returned a verdict granting the Stocks immediate possession of the Property. The circuit court entered a judgment of eviction on December 8, 2022. On December 9, the Stocks filed and served a notice of entry of the judgment on the Garretts.

[¶15.]    The Garretts timely filed a request to stay the execution of the judgment of eviction and a motion for judgment as a matter of law, and alternatively, for a new trial. The court entered an order on January 11, 2023, denying the Garretts' motions. On February 10, 2023, the Garretts filed a notice of appeal referencing the January 11 order. The notice of appeal did not reference the underlying judgment of eviction entered by the court on December 8, 2022.

[¶16.]    The Garretts appeal, raising three issues:

1.    Whether the circuit court erred when it denied the Garretts' motion to dismiss.

2.    Whether the circuit court erred when it denied the Garretts' proposed jury instructions regarding the notice provision in the lease agreement.

3.    Whether the circuit court erred when it denied the Garretts' motion for judgment as a matter of law or for a new trial.

[¶17.]    Before briefing was completed, the Stocks filed a motion to dismiss this appeal arguing that this Court lacks appellate jurisdiction because the Garretts failed to appeal from a final appealable order under SDCL 15-26A-3. We took the motion under consideration and ordered the parties to address the jurisdictional

issue along with the merits of the case at the time briefs were submitted. We address the question of jurisdiction before considering the merits of the appeal.

**Appellate Jurisdiction**

[¶18.] The Garretts' notice of appeal was timely filed and served as to both the January 11 order denying their request to stay the execution of the judgment of eviction and their motion for judgment as a matter of law or a new trial. The notice of appeal did not, however, reference the underlying judgment of eviction entered by the court on December 8, 2022. In addressing the Stocks' motion to dismiss, we must determine whether this omission precludes review of the December 8 order.

[¶19.] In support of their claim that this Court lacks jurisdiction, the Stocks rely on SDCL 15-26A-3(3), arguing that the statute merely provides for an appeal from an order *granting* a new trial but does not include an appeal of right from an order *denying* a new trial. They contend that this case is controlled by *Wilge v. Cropp*, where this Court determined there was no jurisdiction to consider an appeal solely from an order denying a motion for a new trial and a motion for a judgment notwithstanding the verdict.[3] 74 S.D. 511, 54 N.W.2d 568 (1952). The Stocks also rely on language from *Johnson v. Lebert Construction, Inc.* that "[i]n the absence of a properly perfected appeal from the judgment, the denial of the post-judgment motions is not reviewable." 2007 S.D. 74, ¶ 9, 736 N.W.2d 878, 882.[4]

---

3. A motion for judgment notwithstanding the verdict was renamed to a motion for judgment as a matter of law when SDCL 15-6-50 was amended in 2006.

4. *Johnson v. Lebert Construction, Inc.* is distinguishable from this case because any effort to appeal the underlying judgment in *Johnson* would have been untimely when the notice of appeal was filed, and the Court could not

(continued . . .)

[¶20.] The Garretts respond that their notice of appeal was timely filed and served as to the underlying judgment and the order denying the post-judgment motions. They argue that their intent to appeal the underlying judgment and the order denying the motion for new trial and judgment as a matter of law was unmistakable at the time the notice of appeal was filed.[5] They contend that "the technicality of missing the word 'Judgment' should not be an appropriate reason for the Court to deem the appeal dismissed." As long as the notice of appeal was timely, the Garretts argue the failure to reference the underlying judgment in their notice of appeal is not jurisdictionally fatal, nor does it present appropriate grounds for dismissal because the Stocks were not prejudiced by the error. *See W. States Land & Cattle Co. v. Lexington Ins. Co.*, 459 N.W.2d 429, 432 (S.D. 1990) ("[O]nly failure to timely serve and file the notice of appeal is jurisdictionally fatal to an appeal's validity, while lesser omissions may be subject to sanctions.").

[¶21.] "This Court has only such appellate jurisdiction as may be provided by the legislature. The right to appeal is statutory and therefore does not exist in the absence of a statute permitting it." *Wegner v. Siemers*, 2018 S.D. 76, ¶ 4, 920

---

(. . . continued)
    have obtained jurisdiction to consider the underlying judgment. 2007 S.D. 74, ¶¶ 5–8, 736 N.W.2d at 879–81.

5. The docketing statement filed with the notice of appeal stated that the "[Garretts] now appeal from the Circuit Court's orders denying the [Garretts'] Motion to Dismiss, striking [the Garretts'] counterclaim, Motion for Judgment as a Matter of Law or New Trial, and the Judgment of Eviction." The docketing statement also identified the issues presented for appeal as: (1) the denial of the motion for judgment as matter of law and for new trial; (2) the denial of the Garretts' request to present counterclaims and defenses in the eviction action; (3) the denial of the motion to dismiss; and (4) the denial of certain jury instructions proposed by the Garretts at trial.

N.W.2d 54, 55 (quoting *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871); *see also* S.D. Const. art. V, § 5 ("The Supreme Court shall have such appellate jurisdiction as may be provided by the Legislature[.]").  Thus, our jurisdiction is limited by our state constitution and statutory provisions.

[¶22.]      "SDCL 15-26A-3 identifies the judgments and orders of circuit courts that may be appealed to this Court."  *Goens v. FDT, LLC*, 2022 S.D. 71, ¶ 4, 982 N.W.2d 415, 417.  This Court has consistently interpreted SDCL 15-26A-3 as a limit to its jurisdictional authority.  *See Weisser v. Jackson Twp.*, 2009 S.D. 43, ¶ 3, 767 N.W.2d 888, 889 ("SDCL 15-26A-3 limits our appellate jurisdiction."); *Nelson v. Estate of Campbell*, 2023 S.D. 14, ¶ 16, 987 N.W.2d 675, 682 ("Our authority to review civil judgments and orders is described in SDCL 15-26A-3."); *Smith v. Tobin*, 311 N.W.2d 209, 210 (S.D. 1981) ("An appeal may not be taken from an order unless it is authorized under SDCL 15-26A-3.").

[¶23.]      Since at least 1919, the Legislature has also required timely filing and service of a notice of appeal to perfect an appeal.  *See* Sections 3145 and 3146, Rev. Code 1919; *see also* SDCL 15-26A-6 ("An appeal from a judgment or order must be taken within thirty days after the judgment or order shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party."). We have consistently held that timely filing and service of a notice of appeal is a jurisdictional prerequisite to perfecting an appeal.  *See Long v. Knight Constr. Co., Inc.*, 262 N.W.2d 207, 209 (S.D. 1978) ("This [C]ourt is without jurisdiction of an untimely appeal."); *Wright v. Temple*, 2023 S.D. 34, ¶ 22, 993 N.W.2d 553, 559 ("The

'[f]ailure to timely serve and file a notice of appeal is jurisdictionally fatal to the appeal.'" (alterations in original) (citation omitted)).

[¶24.]     On the other hand, the Legislature has authorized this Court to "make all rules of practice and procedure [deemed] necessary for the administration of justice in all civil and criminal actions[.]" SDCL 16-3-2. These Court instituted procedural rules are not jurisdictional prerequisites but instead promote the orderly progression and resolution of cases and appeals. *See Piedmont Indep. Sch. Dist. No. 34 of Meade Cnty v. Meade Cnty Bd. of Ed.*, 78 S.D. 384, 386, 103 N.W.2d 177, 178 (1960) ("While it is often said that the time and manner of the exercise of the right to appeal is statutory, that is not entirely accurate because of the right of this [C]ourt to regulate the procedural aspects of appeals under its rule-making power."). For example, SDCL 15-26A-4 sets forth a number of Court created procedural rules for filing appeals, including a requirement that the notice of appeal "shall designate the judgment, order, or part thereof appealed from[.]" However, this rule concludes by providing that the "[f]ailure of an appellant to take *any step other than timely service and filing of a notice of appeal* does not affect the validity of the appeal, but is ground only for such action as the Supreme Court deems appropriate, which may include dismissal of the appeal." *Id.* (emphasis added).

[¶25.]     The United States Supreme Court has recently discussed the distinction between statutory jurisdictional requirements and court rules for processing appeals:

> Jurisdictional requirements mark the bounds of a "court's adjudicatory authority." Yet not all procedural requirements fit that bill. Many simply instruct "parties to take certain procedural steps at certain specified times" without conditioning

a court's authority to hear the case on compliance with those steps. These nonjurisdictional rules "promote the orderly progress of litigation" but do not bear on a court's power. The distinction matters. Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and, as relevant to this case, do not allow for equitable exceptions. Mindful of these consequences, we have endeavored "to bring some discipline" to use of the jurisdictional label. To that end, we treat a procedural requirement as jurisdictional only if Congress "clearly states" that it is. Congress need not "incant magic words," but the "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences."

*Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203, 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524 (2022) (internal citations omitted). "A requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.'" *Id.* at 206–07 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154, 133 S. Ct. 817, 184 L. Ed. 2d 627 (2013)). Rather, the critical feature is "a clear tie between the [requirement] and the jurisdictional grant." *Id.* at 207.

[¶26.] The question remains whether the Garretts' failure to reference the underlying judgment in the notice of appeal is a jurisdictional defect, or merely a failure to comply with a procedural requirement of this Court. In contrast with jurisdictional prerequisites for timely filing and service of a notice of appeal, the requirement in SDCL 15-26A-4 that a notice of appeal "shall specify the . . . order, or part thereof appealed from" has never been treated as jurisdictional by any statute. To the contrary, SDCL 15-26A-4 provides that the failure "to take any step other than timely service and filing of a notice of appeal does not affect the validity of the appeal[.]"

[¶27.]     Moreover, our decisions have tacitly recognized that a defect in a timely filed and serviced notice of appeal is not jurisdictional, as we have held that "notices of appeal are liberally construed [in favor of their sufficiency] where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." *State v. Gutnik*, 2010 S.D. 82, ¶ 5, 790 N.W.2d 495, 496 (quoting *Raven Indus., Inc. v. Lee*, 2010 S.D. 49, ¶ 6 n.3, 783 N.W.2d 844, 847 n.3); *see also Watts v. Medics Pharm. Corp.*, 342 P.3d 847, 851 (Ariz. Ct. App. 2015) ("Absent such prejudice, 'society's interests in adjudicating appeals on the merits should govern.'" (citation omitted)).  Therefore, we conclude that the Garretts' failure to reference the underlying judgment in the notice of appeal, which was timely filed and served, does not preclude our review of the December 8 order.

[¶28.]     Contrary to the Stocks' claim, *Wilge* does not control this issue.  In *Wilge*, this Court held that the predecessor statute to SDCL 15-26A-3 did not allow for an appeal of right from an order denying a motion for new trial.[6]  74 S.D. at 513, 54 N.W.2d at 569.  Significantly, the appellants in *Wilge* did not argue that they

---

6.     At the time *Wilge* was decided, "SDC 33.0701 enumerate[ed] the orders from which appeals may be taken to this court."  74 S.D. at 512, 54 N.W.2d at 568.  Like the current version of SDCL 15-26A-3(3), subsection (3) of SDC 33.0701 provided for an appeal of right from "[a]n order granting a new trial[,]" but did not provide a right of appeal from an order denying a motion for new trial.  In rejecting the argument that an appeal of right could be had from an order *denying* a motion for new trial, *Wilge* noted that subsection 3 of § 3168 of the 1919 Code, the precursor to SDC 33.0701(3), had "specifically authorized an appeal from an order granting or *denying* a new trial."  4 S.D. at 513, 54 N.W.2d at 568 (emphasis in original).  In contrast, when the Legislature enacted SDC 33.0701(3) the language permitting an appeal from "an order *denying* a new trial [had] been removed from the list of appealable orders."  *Id.*  Thus, an order denying a new trial was only "reviewable in an appeal from a judgment under SDC 33.0710."  *Id.*

intended to appeal both the order denying the motion for new trial and the underlying judgment and we rejected the appellants' sole argument that, even if SDC 33.0701(3) did not allow for an appeal of right from an order denying a motion for new trial, the order was appealable under SDC 33.0701(2) and (4).[7] *Id.*

[¶29.] While the Garretts' failure to reference the judgment of eviction in their notice of appeal is not jurisdictional, the Garretts did not comply with the procedural requirement of SDCL 15-26A-4(1) when they failed to "designate the judgment, order, or part thereof appealed from[.]" In such circumstances, we must determine whether any party was prejudiced by the irregularity, or if any other reason exists to dismiss the appeal. *See* SDCL 15-26A-4.

[¶30.] The Stocks have not claimed they were prejudiced or misled by the omission and the record does not support a claim of prejudice from the procedural irregularity in the Garretts' notice of appeal. The Garretts' accompanying docketing statement specifically referenced the underlying judgment and identified alleged errors relating to matters outside of the court's final order. While the docketing statement cannot create jurisdiction, it removed any doubt about the issues the Garretts were raising on appeal.

[¶31.] We deny the Stocks' motion to dismiss for lack of appellate jurisdiction and proceed to address the merits of the appeal.

---

7. These subsections are nearly identical to the current language in SDCL 15-26A-3(2) and (4). At the time those subsections permitted appeals of right for: "(2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken; [and] (4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment."

## Standard of Review

[¶32.]     When a court's decision on a motion to dismiss is "purely grounded in applying the applicable law to presumed facts, we apply a de novo standard of review." *Paul v. Bathurst*, 2023 S.D. 56, ¶ 11, 997 N.W.2d 644, 650. "[A] circuit court's decision to grant or deny a motion for judgment as a matter of law must be reviewed de novo on appeal." *Magner v. Brinkman*, 2016 S.D. 50, ¶ 13, 883 N.W.2d 74, 81. However, a circuit court's decision on a motion for new trial is reviewed under an abuse of discretion standard. *Alvine Fam. Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 513. As such, "a motion for new trial will not be granted if the jury's verdict can be explained with reference to the evidence, and the evidence is viewed in the light most favorable to the verdict." *Id.* This Court reviews a circuit court's denial of a proposed jury instruction under an abuse of discretion standard. *Sedlacek v. Prussman Contracting, Inc.*, 2020 S.D. 18, ¶ 17, 941 N.W.2d 819, 823 (citing *Vetter v. Cam Wal Elec. Co-op., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615).

## Analysis

### 1.     *Whether the circuit court erred when it denied the Garretts' motion to dismiss.*

#### a.     *Adequacy of the notice to quit*

[¶33.]     The Garretts argue that the Stocks commenced the forcible entry and detainer action before the three-day notice to quit period expired under SDCL 21-

16-2.[8] They rely on the computation of time rule in SDCL 15-6-6(a) to support their claim that the Stocks did not provide them with adequate time to cure before commencing this action.[9] The Garretts argue that failure to comply with SDCL 21-16-2 was jurisdictional. *See Meservy v. Stoner*, 50 S.D. 147, 208 N.W. 781, 782 (1926) ("The statute means that the three days' notice must be given before the summons can be issued. This statute makes the service of the notice jurisdictional.").

[¶34.]     The Stocks respond that the notice to quit was served on July 1 and four days passed before the forcible entry and detainer action was commenced on July 6. The Stocks argue that they complied with the three-day notice to quit requirement under SDCL 21-16-2, and that the computation of time rule found in SDCL 15-6-6(a) has no application to SDCL 21-16-2. In support, they cite SDCL 15-6-81(a), Appendix A, which states that SDCL chapter 15-6 does not apply to special proceedings "insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules[.]" Since SDCL chapter 21-16, which is titled as "Forcible entry and detainer", is included as a special proceeding under SDCL 15-6-

---

8.     The three-day notice to quit requirement was repealed effective July 1, 2024, and a notice requirement no longer exists for actions commenced after the date of the repeal. *See* 2024 S.D. Sess. Laws ch. 75, § 1.

9.     The notice to quit was served on Friday July 1. July 2 and 3 were weekend days, and July 4 was a legal holiday. In computing time after service, SDCL 15-6-6(a) excludes the day of service and includes the last day "unless it is a Saturday, a Sunday or a legal holiday[.]" Additionally, "[w]hen the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." SDCL 15-6-6(a). Applying these rules, the Garretts claim that July 1, 2, 3, and 4 are excluded from the computation and that the Stocks commenced the action on July 6, two days before the notice to quit period ran.

81(a), Appendix A, the Stocks argue that the "computation of time set forth in SDCL 15-6-6(a) . . . conflicts with the expedited nature" of SDCL 21-16-2 which seeks to provide accelerated proceedings to landlords attempting to evict breaching tenants.

[¶35.]    At the time this action was commenced, SDCL 21-16-2 required that "[i]n all cases arising under subdivisions 21-16-1(4), (5), and (6), three days' written notice to quit must be given to the lessee . . . before proceedings can be instituted[.]" We have held that the statutory three-day notice to quit prerequisite to commencing an eviction action is jurisdictional. *Capp Homes, Inc. v. Ferguson*, 86 S.D. 65, 67, 191 N.W.2d 171, 171 (1971) (dismissing the eviction action for lack of jurisdiction against one of the tenants who was not served with a notice to quit before the action was commenced); *Meservy*, 208 N.W. at 782 (dismissing the eviction action for lack of jurisdiction when the eviction action was commenced before the statutory three days had passed after service of the notice to quit). We have not addressed, however, the proper calculation of the three-day notice period following service of the notice to quit, nor whether SDCL 15-6-6(a) should be applied to calculate whether the three-day time period under SDCL 21-16-2 was satisfied.

[¶36.]    SDCL 15-6-81(a) provides that the Rules of Civil Procedure do not apply to forcible entry and detainer actions "insofar as they are inconsistent or in conflict with [chapter 15-6]." On its face, SDCL 21-16-2 simply required that "three days' written notice to quit must be given to the . . . party in possession, before proceedings can be instituted[.]" The statute did not direct how the three-day notice period should be calculated. However, SDCL 2-14-14, provides that "[t]he time in which any act provided by law is to be done is computed by excluding the first day

and including the last, unless the last is a holiday and then it also is excluded."

SDCL 2-14-32, states that the sections of SDCL chapter 2-14 are intended to apply

to "the South Dakota Codified Laws[.]" Applying SDCL 2-14-14 to SDCL 21-16-2

leads to a calculation that the three-day period after service of the notice to quit ran

on July 5. Unlike the rule of civil procedure found at SDCL 15-6-6, which excludes

weekends when a notice period is less than ten days, the statute at SDCL 2-14-14

does not exclude weekends. Thus, calculating the time under SDCL 2-14-14

conflicts with SDCL 15-6-6, precluding the time calculation in SDCL 15-6-6.[10]

[¶37.]        Therefore, the circuit court did not err in denying the Garretts' motion

to dismiss on this basis.

### b.        *Mandatory mediation*

[¶38.]        The Garretts also argue that the circuit court erred in denying their

motion to dismiss under SDCL 54-13-10. SDCL 54-13-10 requires a creditor to

submit a request for mediation before pursuing any action to enforce a debt against

agricultural property equal to or greater than fifty thousand dollars. The Garretts

claim that the Stocks never made this request, and the court should have dismissed

the Stocks' complaint as a result. The Stocks respond by asserting that this dispute

is not subject to SDCL 54-13-10 because the Stocks and the Garretts were involved

in a lessor/lessee relationship rather than a creditor/borrower relationship.

---

10.    This computation of time is consistent with *Meservy v. Stoner* where this
Court relied on a statutory provision identical to SDCL 2-14-14 when
calculating the three-day time period after serving the notice to quit. 208
N.W. at 782. At the time, Section 10665 of the Revised Code of 1919 provided
that "[t]he time in which any act provided by law is to be done is computed by
excluding the first day and including the last, unless the last is a holiday and
then it is also excluded." *Id.* (quoting S.D. Rev. Code 1919, § 10665).

[¶39.]     The text of SDCL 54-13-10 applies only to creditor and borrower transactions for actions "to enforce a debt . . . against agricultural land or agricultural property of the borrower." While this arrangement was designed to satisfy the Garretts' outstanding debt to other creditors, the Stocks did not extend any credit to the Garretts. More importantly, the document at issue is a lease. The Stocks only seek possession of the agricultural property they own. They do not seek to enforce any debt against any land or property owned by the Garretts. As such, any claim arising from this relationship is not subject to the mandatory mediation provisions in SDCL 54-13-10.

c.     *Parallel litigation*

[¶40.]     The Garretts also argue that the circuit court should have dismissed the Stocks' forcible entry and detainer action because a parallel action involving essentially the same issues had already been commenced in federal court. The Garretts argue that the court improperly permitted the Stocks to split their claims by filing a state court action for immediate possession while maintaining a counterclaim for damages in the federal court action. They assert that "parties are required to bring forward their whole case" and may not try it piecemeal. The Garretts maintain that the federal court action constitutes the "same convenient trial unit" and that the matters resolved in this forcible entry and detainer action will necessarily resolve and be conclusive of matters to be determined in the federal court action.[11] Because the federal court action was filed before the forcible entry

---

11.     The Garretts cite *First National Bank in Sioux Falls v. First Nat. Bank S.D.*, 679 F.3d 763, 767 (8th Cir. 2012), and *Arnold v. K-Mart Corp.*, 747 S.W.2d

(continued . . .)

and detainer action, the Garretts contend that the circuit court should have refrained from exercising jurisdiction over the action in state court to avoid exposing their claims to potentially inconsistent results.

[¶41.] Other courts have applied a "claim splitting rule" prohibiting a party from maintaining parallel claims arising from the same facts against a defendant in separate actions. *See* 1 Am. Jur. 2d Actions § 99, (updated January 2025) ("A plaintiff should not engage in 'claim-splitting,' in which the plaintiff seeks to maintain two actions on the same subject in the same court, against the same defendant at the same time."). These courts have likened the rule to claim preclusion before a final judgment. *See Kezhaya v. City of Belle Plaine*, 78 F.4th 1045, 1050 (8th Cir. 2023)[12] (explaining that claim splitting, or "duplicative litigation," occurs when a plaintiff attempts to maintain two actions against the same defendant based on the same facts). "A dismissal on this ground has been viewed as a matter of docket management, reviewed for abuse of discretion, even in

---

(. . . continued)

130 (Ky. Ct. App. 1988), in support of their contention that this action and the pending federal court action involve parallel claims. However, these cases involved the application of res judicata because of a judgment previously entered in a prior case involving the same issues. Neither *First National Bank* nor *Arnold* involved a motion to dismiss based upon parallel litigation currently pending in another action.

12. Notably, the facts in *Kezhaya*, 78 F.4th 1045 (8th Cir. 2023), differ from this case. In *Kezhaya,* the district court denied a plaintiff's motion to amend the complaint to assert additional causes of action. Thereafter, the plaintiff filed a second action alleging the same causes of action for which the district court had denied the motion to amend. Applying both res judicata and the claims splitting rule, the district court dismissed the second action and imposed sanctions, which were subsequently challenged and affirmed on appeal.

decisions that with some exaggeration describe the theory 'as an aspect of res judicata.'" 18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) (updated June 2024).

[¶42.]    The Garretts make a general argument that the Stocks improperly split their claims for immediate possession and damages, and that the circuit court should have dismissed the forcible entry and detainer action because of parallel litigation that was already pending in federal court. However, they have not cited authority or developed an argument to show how the circuit court abused its discretion by denying the motion to dismiss and permitting the forcible entry and detainer action to proceed in state court.[13] We conclude, based upon the nature of the forcible entry and detainer action and the record before us, that the circuit court neither erred nor abused its discretion in denying the Garretts' motion to dismiss.

[¶43.]    The Stocks' forcible entry and detainer action split their claim for immediate possession from their claim for damages under the lease agreement, leaving the latter for resolution in the federal court action. While splitting these claims may result in two separate determinations as to which party breached the lease agreement, the Legislature has specifically authorized such a split. *See* SDCL 21-16-4 ("An action under the provisions of this chapter cannot be brought in

---

13.    Courts reviewing a motion to dismiss an action because of other pending parallel litigation apply an abuse of discretion standard of review. *See* 18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) (updated June 2024) (explaining that dismissal on the basis of claim splitting is reviewed for abuse of discretion). *See also Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 967 (8th Cir. 2013) (applying abuse of discretion review for federal court abstention where parallel proceedings are pending in state court). The Garretts have not argued that the circuit court was without discretion to decide whether to dismiss the forcible entry and detainer action because of the pending federal court litigation.

connection with any other except for rents and profits or damages *but the plaintiff may bring separate actions for the same if he so desire.*" (emphasis added)).

[¶44.] In addressing the motion to dismiss, the circuit court appears to have concluded that the federal court did not have jurisdiction over the forcible entry and detainer action under chapter 21-16. But we need not decide whether this conclusion was erroneous. Even if the federal court had jurisdiction to hear the forcible entry and detainer action, the Stocks were specifically authorized by state law to split the claim for immediate possession from the claim for damages. Assuming the federal court had jurisdiction, the Stocks could file the forcible entry and detainer action separately from the claim for damages in either state or federal court.

[¶45.] Finally, the Garretts contend that the circuit court "should have abstained from jurisdiction based on the fact that parallel litigation had already commenced," relying on *Fru-Con Construction Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009).[14] The Garretts argue that application of the federal abstention factors set forth in *Fru-Con* warrants the circuit court's abstention from the forcible entry and detainer action to allow their federal action to proceed first. However, even when parallel proceedings exist, abstention is not mandated, and "a

---

14. Although the federal abstention doctrine is distinct, we have recognized similar doctrines, such as forum non conveniens and comity, affording the circuit court discretion to stay or dismiss a case in deference to a parallel case pending in a foreign tribunal, or to a judgment that has previously been entered. *See Peterson v. Feldmann*, 2010 S.D. 53, ¶ 9, 784 N.W.2d 493, 496 (affirming a circuit court's dismissal on the grounds of forum non conveniens); *SDDS, Inc. v. State*, 1997 S.D. 114, ¶ 17, 569 N.W.2d 289, 295 (applying comity to a judgment previously entered in federal court). The Garretts did not ask the circuit court to apply either doctrine in this case.

district court enjoys broad discretion" in deciding whether to abstain. *Lexington Ins. Co.*, 721 F.3d at 967; *see also Avera McKennan Hosp. v. EMC - Employers Mut. Cas. Co.*, No. CIV 18-4007, 2018 WL 4290400, at *2 (D.S.D. Sept. 7, 2018) ("[W]here there exists a 'parallel' state court action to the federal declaratory judgment action, and the federal case involves questions of state law, the district court's discretion is at its peak due to principles of federalism and comity.").

[¶46.]     Aside from the fact that the federal court action was already pending, the Garretts have not cited any factors from *Fru-Con* supporting their argument that the circuit court should have deferred to the federal court and dismissed the forcible entry and detainer action.  Moreover, *Fru-Con* notes that case priority is not necessarily determined by which case was filed first but rather places "a greater emphasis on the relative progress made in the cases[.]" *Id.* at 534.

[¶47.]     At the time the motion to dismiss was heard in the forcible entry and detainer action, the case was ready to proceed to trial.  After denying the motion to dismiss, the court scheduled a trial within sixty days.  There is nothing in the record to show that the federal court action was ready to proceed to trial or that discovery had been completed.  Additionally, the Stocks began legal efforts to terminate the lease agreement in August 2021, by sending a notice to the Garretts that the lease agreement would terminate on March 1, 2022, if the alleged rent default was not cured.  The Garretts would have been well aware at the time they filed the federal court action that the Stocks would likely be seeking immediate possession of the real property soon thereafter.

[¶48.] Although the outcome of this case may have preclusive effect on some of the issues in the federal case, it will not fully determine the federal action, particularly the claims for damages by either party. Moreover, the claims for breach of the lease agreement were litigated before a Hughes County jury over the course of two days. The Garretts have not argued that they were unable to fully present their claims and defenses relating to breach of the lease agreement, or that they were otherwise prejudiced by the state court proceedings for immediate possession.

[¶49.] For all these reasons, we affirm the circuit court's denial of the motion to dismiss.

### 2. Whether the circuit court erred when it denied the Garretts' proposed jury instructions regarding the notice requirement provision in the lease agreement.

[¶50.] The Garretts argue that the circuit court erred when it denied their proposed jury instruction explaining the lease agreement's requirement that the Stocks provide the Garretts with written notice of default through the Escrow Agent.[15] The Garretts allege that without an instruction explaining the notice requirement, the jury was unaware "that the Stocks' failure to strictly comply with the notice provisions entitled the Garretts to continued possession."

---

15. The Garretts' proposed instruction provided:

> The [Garretts] claim that the [Stocks] were required to provide written notice of default to the escrow agent pursuant to paragraph 13 of the Farm Lease Agreement, which provides the Garretts 60 days to cure any alleged defect pursuant to Section 12 of the Farm Lease Agreement. If you find that [Stocks] violated these requirements, then the complaint for forcibly entry and detainer must be denied.

[¶51.]     The Stocks respond that the Garretts were not "entitled to instructions highlighting specific pieces of evidence that the Garretts believe support their theory of the case[,]" as long as the jury was "aware of the notice defense or the contractual basis for the defense." They maintain that the final jury instructions adequately instructed the jury on the applicable principles of law that were relevant to the case.

[¶52.]     While the court is afforded discretion in giving instructions, "no court has discretion to give incorrect, misleading, conflicting or confusing instructions [and] to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial." *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615. "Erroneous instructions are prejudicial . . . when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *Id.* "A circuit court does not err simply by refusing 'to amplify instructions which substantially cover the principle embodied in the requested instruction.'" *State v. Kryger*, 2018 S.D. 13, ¶ 41, 907 N.W.2d 800, 814 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 20, 772 N.W.2d 117, 123). Thus, "[i]nstructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law." *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D. 1979) (citation omitted).

[¶53.]     The court provided instructions explaining that each party claimed the other party had breached the lease agreement, and defined a material breach that would excuse the other party's performance. The court also instructed the jury that if the jury found "[the Stocks] first materially breached the Lease Agreement, [the

Garretts'] breaches would thereby be excused." The Garretts did not object to these instructions and their proposed instruction was merely an amplification of the instructions given by the court. The agreements were put into evidence and the Garretts were afforded the opportunity to argue their breach claims against the Stocks. The circuit court did not abuse its discretion in denying the Garretts' proposed instruction.

### 3. Whether the circuit court erred when it denied the Garretts' motion for judgment as a matter of law or for new trial.

[¶54.]     The Garretts argue that the undisputed evidence showed that the Stocks failed to comply with the provisions of the lease agreement when they did not provide a sixty day notice to cure to the Garretts through the Escrow Agent. They contend this was a material breach of the lease agreement and "[n]o reasonable juror could have, or should have, issued a finding for the Stocks" because of this breach. As such they argue the court erred in failing to grant their motion for judgment as a matter of law, or alternately, the court should have granted their motion for a new trial.

[¶55.]     The Stocks respond that the Garretts were the first party to materially breach the lease agreement by failing to make timely lease payments, thereby relieving the Stocks of any notice requirement contained in the lease agreement. They further argue that once the jury was instructed—without objection—that the Garretts had to make their lease payments to avoid materially breaching the agreement, it became the law of the case and foreclosed the Garretts' ability to challenge the jury's finding of a material breach.

[¶56.] In considering a motion for judgment as a matter of law, "we apply the same standard as the circuit court: we view the evidence in the light most favorable to the verdict or to the nonmoving party." *Center of Life Church v. Nelson*, 2018 S.D. 42, ¶ 18, 913 N.W.2d 105, 110 (citing *Magner*, 2016 S.D. 50, ¶ 14, 883 N.W.2d at 81). Then, without weighing the evidence, this Court must determine whether there is evidence supporting the verdict. *Id.* "If sufficient evidence exists so that reasonable minds could differ, judgment as a matter of law is not appropriate." *Id.* (quoting *Magner*, 2016 S.D. 50, ¶ 14, 883 N.W.2d at 81). In similar manner, "a motion for new trial will not be granted if the jury's verdict can be explained with reference to the evidence, and the evidence is viewed in a light most favorable to the verdict." *Alvine Fam. Ltd. P'ship.*, 2010 S.D. 28, ¶ 18, 780 N.W.2d at 512.

[¶57.] "As a lease is a contract we will follow the law of contract in regard to breach." *Tri-City Assoc., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9, 845 N.W.2d 911, 915 (quoting *Icehouse, Inc. v. Geissler*, 2001 S.D. 134, ¶ 21, 636 N.W.2d 459, 465). "It is well established that a material breach of a contract excuses the non-breaching party from further performance." *FB & I Bldg. Prod.'s, Inc. v. Superior Truss & Components, a Div. of Banks Lumber, Inc.*, 2007 S.D. 13, ¶ 15, 727 N.W.2d 474, 478 (citing *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 301 (S.D. 1984)). "Whether a party's conduct constitutes a material breach of contract is a question of fact." *Icehouse, Inc.*, 2001 S.D. 134, ¶ 21, 636 N.W.2d at 465 (citing *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D. 1994)).

[¶58.] The three agreements contain conflicting provisions concerning the parties' obligations in the event of breach. Sections 12 and 13 of the lease

agreement require a sixty-day notice of default to "be made by the escrow agent effective upon delivery to the parties." The lease agreement further provided the breaching party with the right to cure the breach within sixty days of receiving proper notice. In contrast, Section 13 of the purchase agreement, Section 4 of the lease agreement, and Section 17 of the escrow agreement all state that "[i]f any annual lease payment is not paid on or before June 20 of each year, then the lease shall terminate immediately and the purchase option provided in this agreement will be void."

[¶59.]     The evidence at trial showed that the Garretts failed to pay any portion of their June 2021 lease payment. Despite not providing notice through the Escrow Agent, the Stocks gave a written notice of breach directly to the Garretts on August 27, 2021. The written notice sent to the Garretts set forth the amount of the delinquent lease payment and provided that if the delinquent balance was not paid by October 15, 2021, the lease would terminate on March 1, 2022. Although the notice directed the Garretts to cure the default in less than sixty days, the notice informed the Garretts that the lease would not terminate until March 1, 2022, more than 180 days after the notice of default was sent. Despite receiving the Stocks' notice, the evidence shows that the Garretts failed to make any effort to pay the delinquent balance before the lease terminated on March 1, 2022.

[¶60.]     A material breach is one that defeats "the very object of the contract." *Icehouse, Inc.*, 2001 S.D. 134, ¶ 21, 636 N.W.2d at 465 (quoting *Thunderstik Lodge, Inc. v. Reuer*, 1998 S.D. 110, ¶ 25, 585 N.W.2d 819, 824). Based upon the evidence at trial the jury could have reasonably determined that the Garretts materially

breached the lease agreement by failing to pay the June 20, 2021, lease payment. While the evidence showed the Stocks' notice of default did not fully comply with Sections 12 and 13 of the lease agreement, this did not require the court to determine as a matter of law that the Stocks materially breached the lease agreement. Rather, in light of the conflicting termination provisions in the agreements and that the Garretts received the Stocks' written notice of default that set forth the amount due and failed to cure the default for more than six months before the lease terminated, a reasonable juror could have found any noncompliance by the Stocks was not a material breach of the lease agreement. "[A] jury's verdict should be affirmed if it can be explained with reference to the evidence, 'rather than passion, prejudice, or mistake of law.'" *Matter of Estate of Tank*, 2023 S.D. 59, ¶ 39, 998 N.W.2d 109, 122 (quotation omitted). On this record, the court did not err in denying the Garretts' motion for judgment as a matter of law or abuse its discretion by denying the motion for a new trial.

[¶61.] The Stocks also filed a motion to tax attorney fees on appeal in the amount of $14,421.96. We award appellate attorney fees to Stocks in the amount of $5,000.

[¶62.] We affirm.

[¶63.] SALTER and MYREN, Justices, concur.

[¶64.] KERN and DEVANEY, Justices, concur in result.

DEVANEY, Justice (concurring in result).

[¶65.] I concur with the majority opinion, but I write separately on the parallel litigation issue because I arrive at the same result in a different manner.

This case presents a similar scenario as the one presented in *VOR, Inc. v. O'Farrell*, 2025 S.D. 2, ___ N.W.3d ___. Both cases involve disputes between parties regarding the termination of an agricultural lease wherein the landlord commenced a forcible entry and detainer action *after* the tenants had filed a lawsuit alleging claims relating to the underlying dispute. In both cases, the tenants moved to dismiss the forcible entry and detainer action so that the disputed issues could be resolved in the preexisting lawsuit.

[¶66.] While O'Farrell's motion to dismiss centered on the argument that VOR's claim for immediate possession should have been brought as a compulsory counterclaim under SDCL 15-6-13(a) in a preexisting lawsuit, here, unlike the eviction plaintiff in *O'Farrell*, the Stocks had already filed a counterclaim in the Garretts' preexisting federal lawsuit seeking a declaration that the farm lease agreement was terminated. The Garretts' motion to dismiss thus focused on the parallel nature of the existing claims raised in both suits and the case law governing when one of the courts should abstain from proceeding on a parallel claim, particularly when one suit is brought in federal court and the other in a state court.

[¶67.] In its denial of the Garretts' motion to dismiss, the circuit court agreed that the state and federal actions were parallel, as do I. However, the circuit court then determined that the federal court could not exercise jurisdiction over the eviction claim. I disagree with this conclusion. The cases cited by the Stocks to support this view involved parties attempting to challenge an eviction order already entered by a state court in a later filed federal action. *See, e.g.*, *Ally v. Sukkar*, 128

F. App'x 194 (2d Cir. 2005) (dismissing a complaint seeking damages associated with a state court eviction judgment); *Jordan v. Levine*, No. 12CV3527, 2012 WL 2921024 (E.D.N.Y. July 17, 2012) (a lawsuit against a state court judge by a tenant seeking damages and a stay of an eviction ordered by the judge).  That is not what the Garretts requested here.  Instead, they asked the circuit court to allow the federal court to address the parallel claim for termination of the lease and possession of the property in the first instance.  A federal court exercising diversity jurisdiction has jurisdiction to decide accompanying state law claims, which may include eviction claims, as in the case here.  *See Barrington Bank & Tr. Co., Nat'l Ass'n v. Fed. Deposit Ins. Corp.*, No. 14C06710, 2015 WL 1888284 at *4–5 (N.D. Ill. Apr. 24, 2015) (also concluding a federal court exercising subject matter jurisdiction has supplemental jurisdiction under 28 U.S.C. § 1367 over a state law eviction claim which is a compulsory counterclaim); *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 551–54 (7th Cir. 2002) (holding that the federal court had diversity jurisdiction over a state law eviction claim).

[¶68.]     For the reasons I expressed in my dissent in *O'Farrell*, it is my view that the circuit court should have held the state eviction action in abeyance to allow the underlying breach of contract claims relating directly to the right to possession of the property to be litigated along with the parties' other related claims raised in the preexisting federal suit.  *See O'Farrell*, 2025 S.D. 2, ¶ 71, ___ N.W.3d ___, ____ (DeVaney, J., dissenting); *Raich v. Weisman*, 58 S.D. 4, 234 N.W. 664 (1931) (directing the dismissal without prejudice of a forcible entry and detainer action to allow the issues to be tried in other pending lawsuits or a consolidation thereof so

that the issues could be tried and determined in one action); *Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312, 318–19 (Minn. Ct. App. 2008) (holding that "when the counterclaims and defenses are necessary to a fair determination of the eviction action, it is an abuse of discretion not to grant a stay of the eviction proceedings when an alternate civil action that involves those counterclaims and defenses is pending").

[¶69.]        While I agree that SDCL 21-16-4 allows landlords or property owners to split their claims when bringing an eviction action under SDCL chapter 21-16, this statute does not preclude a court from holding a forcible entry and detainer action in abeyance and allowing the disputed issues underlying the right to possession of property to be litigated in a preexisting civil action. In some cases, an action brought under the abbreviated timeframes in chapter 21-16 may not be well-suited to address underlying disputes which are more complicated than the run-of-the-mill eviction claims. Also, an eviction action is not the only way in which landlords could reacquire possession of the property at issue. Temporary injunctive relief or an intermediate order could be sought in a preexisting lawsuit to resolve who should maintain possession of the property while the underlying disputed issues are being litigated.

[¶70.]        However, I ultimately concur in the affirmance on this issue because, as noted in the majority opinion, the Garretts have not established how they were prejudiced by the circuit court's denial of their motion to dismiss. Unlike the tenants in the *O'Farrell* eviction action, the Garretts were granted a continuance and allowed to present their evidence and arguments to a jury regarding the

underlying breach of contract dispute governing who was entitled to immediate possession of the property.

[¶71.]     KERN, Justice, joins this writing.